Filed 12/9/14  P. v. Tisdale CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>COLIN SEAN TISDALE,<br><br>    Defendant and Appellant. | H040035<br>(Santa Cruz County<br>Super. Ct. No. F23664) |

In this appeal, Colin Sean Tisdale (appellant) contends that his conviction for transporting methadone should be reversed because the prosecution for that offense was barred by the two dismissal rule of Penal Code section 1387.  Alternatively, appellant contends that the entire judgment must be reversed because it was based on the admission of a statement obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

*Procedure Below*

On September 4, 2012, the Santa Cruz County District Attorney filed a first amended felony complaint in case No. F23254 in which appellant was charged with possession for sale of a controlled substance (Health & Saf. Code, § 11351, count one), transportation of a controlled substance (Health & Saf. Code, § 11352, subd. (a), count two), and possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a), count three).

On the same day, following a preliminary examination, the magistrate held appellant to answer on only count three; the magistrate dismissed the felony counts for possession for sale and transportation for lack of probable cause. On September 12, 2012, the People filed an information charging appellant with possession of a controlled substance (count two) as well as the dismissed count of transportation of a controlled substance (count one). The case was assigned to the same judge who had conducted the preliminary examination—Judge Salazar.

Thereafter, on November 1, 2012, the People moved the court to dismiss both charges pursuant to Penal Code section 1385. The prosecutor told the court, "the drugs haven't been officially tested yet. So given the time not waived status, we are going to dismiss and refile. We have filed our new complaint with the court. I believe we have a new case number." The court granted the motion to dismiss the information. Defense counsel told the court that he intended to demur to count one because it was barred by Penal Code section 1387.[1]

In the new complaint with the new case number, F23664, again appellant was charged with possession of a controlled substance (count two) and transportation of a controlled substance (count one). On November 2, 2012, defense counsel filed a demurrer to the new complaint in which counsel argued that count one was barred by section 1387.

On November 7, 2012, Judge Salazar heard appellant's demurrer to count one.[2] Relying on *People v. Superior Court* (*Martinez*) (1993) 19 Cal.App.4th 738 (*Martinez*), Judge Salazar overruled the demurrer.

---

[1]     All unspecified statutory references are to the Penal Code.
[2]     While defense counsel entitled his motion a "demurrer," it is apparent from the record that Judge Salazar treated it as a motion to dismiss based on violation of the two dismissal rule in section 1387.

2

On November 13, 2012, the prosecutor filed a motion pursuant to Code of Civil Procedure section 170.6 to disqualify Judge Salazar. Accordingly, the case was reassigned.

On November 26, 2012, at the end of a preliminary hearing in the new case, Judge Volkmann held appellant to answer on the transportation charge. Thereafter, the prosecutor filed an information in F23664 in which appellant was charged with transportation of a controlled substance (count one) and possession of a controlled substance (count two).

In an amended information filed on January 23, 2013, the prosecutor charged appellant with the possession and transportation counts. The amended information contained several allegations. Specifically, the prosecutor alleged (1) that appellant had a prior conviction for robbery (§ 211), which was alleged as a strike under section 667, subdivisions (b) through (i) and as a prior prison term under section 667.5, subdivision (b); (2) that appellant had a prior conviction for assault with a deadly weapon (§ 245), which was alleged as a second strike under section 667, subdivisions (b) through (i); (3) that appellant had a prior conviction for possession for sale of a controlled substance (Health & Saf. Code, § 11351), which was alleged as a prior prison term under section 667.5, subdivision (b) and as a controlled substance prior (Health & Saf. Code, § 11370.2, subd. (a)); and (4) that appellant had two additional possession for sale convictions (Health & Saf. Code, § 11378), which were alleged as controlled substance priors (Health & Saf. Code, § 11370.2, subd. (a)).

On January 28, 2013, the jury convicted appellant of the transportation and the possession charges. Immediately thereafter, the court found true the prior conviction allegations. On August 20, 2013, the trial court sentenced appellant to nine years in state prison.

3

*Facts*

Given the issues on appeal, we recite only the short version of the facts. On August 16, 2012, officers conducted a traffic stop of a car driven by appellant's father on Highway 17. Eventually, the car pulled over and officers asked appellant to get out of the car. Appellant was placed in handcuffs and two officers conducted a patsearch for weapons. During the patsearch the officers asked appellant if they could search his pockets. Appellant consented; in his jacket pockets, officers found approximately 150 methadone pills in a pill bottle and a plastic baggie with approximately 33 more methadone pills. The plastic baggie had been heat-sealed. In a conversation with the officers, appellant admitted that he had received some of the pills "from someone else[]" and "[t]hose actual pills came from a different person."[3] The parties stipulated that appellant had a valid prescription for 403 methadone pills, which required him to take 13 pills per day; and they stipulated that appellant had filled that prescription at Emeline Pharmacy on August 10, 2012, which was two days before he was arrested.

*Discussion*

*Two Dismissal Rule*

As noted, appellant contends that his conviction for transportation of a controlled substance must be reversed because his prosecution on that charge was barred by the two dismissal rule of section 1387.

Section 1387, subdivision (a) provides in pertinent part, "An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony . . . and the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995. . . ."

Despite the reference in section 1387, subdivision (a) to an order terminating an action, it is now well established that the provision applies to the dismissal of a single

---

[3] A tape recording of appellant's statements to the officers was played for the jury.

4

count in a criminal proceeding, even though the entire complaint is not dismissed. (See, 5 Witkin & Epstein, Cal. Crim. Law (4th ed. 2012) Criminal Trial, § 481(3), p. 749.)

" '[U]ntil 1975, the interest in prosecuting felonies was considered so much greater that, while a one-dismissal rule applied to misdemeanors, felony charges could be refiled ad infinitum. [Citations.]' [Citation.] However, in 1975, section 1387 was amended to add the felony 'two dismissal' limit. [Citations.] Felony prosecutions are now generally 'subject to a two-dismissal rule; two previous dismissals of charges for the same offense will bar a new felony charge.' [Citation.] [¶] 'Section 1387 implements a series of related public policies. *It curtails prosecutorial harassment by placing limits on the number of times charges may be refiled.* [Citations.] The statute also reduces the possibility that prosecutors might use the power to dismiss and refile to forum shop. [Citations.] Finally, the statute prevents the evasion of speedy trial rights through the repeated dismissal and refiling of the same charges. [Citations.]' [Citation.] *'The purpose of section 1387 is to prevent improper successive attempts to prosecute a defendant.'* [Citation.]" (*Berardi v. Superior Court* (2008) 160 Cal.App.4th 210, 218-219, italics added.)

However, "[n]ot every dismissal qualifies as a dismissal for purposes of section 1387." (*Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1017, fn. 5 [under § 1387, subds. (a)-(c) the statute spells out various circumstances in which a prior dismissal will be excused and not count toward a prosecution bar].) "Whether a *third or subsequent prosecution* of a felony is barred by an earlier termination depends on the nature and circumstances of the previous dismissals. [Section] 1387 expressly refers to an action terminated by a dismissal for want of prosecution, speedy trial, or in furtherance of justice ([section] 1381 et seq., [section] 1385), a dismissal for failure to provide a speedy or continuous preliminary examination ([section] 859b, [section] 861), a dismissal for lack of proof that a public offense has been committed ([section] 871), and an order

5

setting aside an indictment or information ([section] 995). Where there are successive dismissals on any of these grounds, or combinations of them, the order terminating the second action operates to bar any third or subsequent prosecution on the same charge unless one of the statutory *exceptions* applies." (5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Trial § 423, p. 600.)

In general, the parties agree that section 871 and section 1385, both of which fall within the purview of section 1387, are implicated in this case.

In determining whether the complaint in F23664 is a third filing of the transportation charge as appellant contends, we first look to *Martinez*, *supra*, 19 Cal.App.4th 738. In *Martinez*, the People filed a two-count complaint in which three defendants were charged with murder and conspiracy to commit insurance fraud. At the conclusion of the preliminary hearing, the magistrate held one defendant to answer for murder and held all three defendants to answer for conspiracy to commit insurance fraud. The magistrate concluded, however, that the evidence was insufficient to provide reasonable cause to believe two of the defendants were guilty of murder. (§ 871.) Thereafter, as permitted by section 739, the People filed an information charging all three defendants with both murder and conspiracy to commit insurance fraud. All three were arraigned on the information. (*Martinez*, *supra*, at p. 742.)

Meanwhile, the People sought and were granted a grand jury indictment (§ 737) against, among others, the same three defendants for murder and insurance fraud. After the indictment was unsealed and presented (§ 944), on the People's motion, the trial court dismissed the information in the interest of justice (§ 1385) and arraigned the three defendants on the indictment. (*Martinez*, *supra*, 19 Cal.App.4th at pp. 742-743.)

On the motion of all three defendants to set aside the indictment, the trial court found the evidence presented to the grand jury provided reasonable cause to try them for murder. Two defendants thereafter contended, however, that the dismissal of the information pursuant to section 1385 was a second termination which, pursuant to

6

section 1387, barred further prosecution under the indictment. The trial court agreed with these two defendants that prosecution of them for murder under the indictment was barred by section 1387 and the court dismissed the murder count in the indictment. The People sought a writ of mandate to compel the superior court to vacate this order. (*Martinez*, *supra*, 19 Cal.App.4th at p. 743.)

The Court of Appeal held that the magistrate's dismissal of a murder count at the end of the preliminary hearing pursuant to section 871 did not terminate the action and, therefore, the dismissal of the information pursuant to section 1385 on motion of the prosecutor was the first termination within the meaning of section 1387. (*Martinez*, *supra*, 19 Cal.App.4th at pp. 744-747.) The court explained that a magistrate's failure to hold a defendant to answer is not a dismissal because it is not a final termination of the action. (*Id.* at p. 744.) The court stated, "The action continues with an information filed under the same case number pursuant to section 739. The action is not terminated at all if the superior court disagrees with the magistrate and denies a section 995 motion based on the evidence produced at the preliminary hearing. The action then proceeds, possibly to conviction. In any event, the action remains alive at least *until* the superior court agrees with the magistrate's ruling and grants the defendant's section 995 motion. The action is terminated when the superior court dismisses the information pursuant to section 995." (*Id.* at p. 745.) The court opined, "[A] magistrate's (first) dismissal under section 871 is not by itself a termination of the action when followed by the filing of an information under section 739 . . . ." (*Id.* at p. 746.)[4]

---

[4] Section 739 authorizes the prosecution, following a section 871 dismissal after a preliminary hearing, to proceed in the same case by filing an information charging "offenses shown by the evidence taken before the magistrate to have been committed," even if the magistrate did not bind the defendant over for trial on those offenses, as long as those offenses are transactionally related to the offenses as to which the defendant was bound over, and as long as the magistrate made no " 'material factual findings' " negating those offenses. (*People v. Superior Court* (*Day*) (1985) 174 Cal.App.3d 1008, 1015; see (continued)

When faced with a dismissal of charges by a magistrate, the *Martinez* court noted that the prosecution could elect to begin again with a new complaint, or it could seek to remedy the situation by refiling the dismissed charges pursuant to section 739. (*Martinez*, *supra*, 19 Cal.App.4th at p. 745.) In the first instance, the magistrate's dismissal would be deemed final upon the filing of the new complaint. If, on the other hand, the charges were refiled, a dismissal within the meaning of section 1387 would occur only if the court dismissed the charges pursuant to section 995. The *Martinez* court did not address the occasion where a refiling of the charges is not legally authorized. However, the *Martinez* court did state, "Whether the magistrate's order of dismissal under section 871 is an order terminating the action within the meaning of section 1387 depends on the circumstances." (*Martinez*, *supra*, at p. 744.)

We find this case to be indistinguishable from *Martinez*. Just as in *Martinez*, Judge Salazar dismissed the transportation count that had been charged in the complaint in F23254. Thereafter, the prosecutor filed an information (with the same case number) in which appellant was charged with possession and transportation of a controlled substance. Appellant was arraigned on the information. Subsequently, on motion of the prosecutor, the court dismissed the information pursuant to section 1385. *Martinez* controls this case.

Appellant attempts to avoid this conclusion by arguing that *Martinez* conflicts with our Supreme Court's earlier decision in *Ramos v. Superior Court* (1982) 32 Cal.3d

_____

also *Jones v. Superior Court* (1971) 4 Cal.3d 660, 664-665.) Here, the transportation count was transactionally related to the possession count, and the court at the preliminary hearing in case F23254 did not make any "material factual findings" negating the transportation charge. (See *Pizano v. Superior Court* (1978) 21 Cal.3d 128, 133-134 [when the magistrate either expressly or impliedly accepts the evidence and simply reaches the ultimate legal conclusion that it does not provide probable cause to believe the offense was committed, such conclusion is open to challenge by adding the offense to the information; magistrate's determination that evidence did not show implied malice to support murder count did not preclude prosecution from recharging the murder count].)

8

26 (*Ramos*) and that *Martinez* was later overruled by the same Court of Appeal for that reason. Appellant is mistaken on both counts.

*Ramos* involved a wholly different procedural posture and presented the type of prosecutorial harassment that section 1387 was drafted to guard against. (*Martinez*, *supra*, 19 Cal.App.4th at p. 746.) As the *Martinez* court explained, "In *Ramos*, after a magistrate dismissed a special circumstance allegation at the preliminary hearing, the People filed a new complaint charging the allegation again. A second preliminary hearing was held, following which the second magistrate also dismissed the allegation. [Citation.] It was in the context of two separate prosecutions, two preliminary hearings and two magistrate's dismissals for insufficiency of evidence (a paradigm example of successive prosecutions harassing a defendant) that the Supreme Court held further prosecution under section 739 would violate section 1387. [Citation.] The court was careful to limit its holding to the circumstance of a *second* magistrate's dismissal order. The court expressly cautioned, 'We note that this case does not present the question of the application of section 1387 to a case in which (1) *a magistrate dismisses a charge one time* under section 871, (2) the prosecution files an information recharging the dismissed matter under section 739, and (3) the superior court dismisses the refiled charge under section 995. Accordingly, we express no view on that issue.' [Citation.] This comment suggested the possibility that in the posed hypothetical there is only one termination of a single action, not two terminations. [¶] In 1984, after *Ramos*, the Legislature amended section 1387 (Stats. 1984, ch. 924, § 1, p. 3091) to include the language now found in subdivision (b)(3): 'However, if the previous termination was pursuant to Section . . . 995, the subsequent order terminating an action is not a bar to prosecution if: [¶] The motion pursuant to Section 995 was granted after dismissal by the magistrate of the action pursuant to Section 871 and was recharged pursuant to Section 739.' This amendment suggests the Legislature also considered a magistrate's first section 871 dismissal, followed by refiling under section 739 and the grant of a section 995 dismissal,

9

to constitute parts of a single prosecution, resulting in one termination of an action, not two." (*Ibid.*)

Contrary to appellant's assertion, *Ramos* does not necessarily govern a situation where a magistrate dismisses a charge under section 871, thereafter an information is filed containing the same charge, and later the information is dismissed by the prosecution in the interests of justice.

As to appellant's assertion that the same court that decided *Martinez* overruled it in *Bodner v. Superior Court* (1996) 42 Cal.App.4th 1801 (*Bodner*), we find no language in *Bodner* questioning the result in *Martinez.* The *Bodner* court correctlydistinguished the procedural posture in *Martinez* by noting that in *Martinez*, as here, "the defendants erroneously attempted to construe the *first* action as having been terminated *twice*, barring prosecution. In that context we referred to the *first* action as having been continued under section 739 until dismissed by the superior court under section 1385." (*Id.* at p. 1806.) In contrast to *Martinez* and this case, where the prosecution continued the first action by filing an information under section 739, which was never resolved on the merits, *Bodner* involved a situation in which multiple triers of fact had determined that the charge at issue lacked probable cause. (*Bodner*, *supra*, at p. 1803.) In *Bodner*, there were two complaints, two preliminary hearings, and two section 871 dismissals by a magistrate.[5] (*Bodner*, *supra*, at p. 1803.) The *Bodner* court distinguished *Martinez* on those facts. The instant case may be similarly distinguished.

---

[5] In *Bodner*, after a preliminary hearing, the magistrate dismissed attempted murder charges for lack of probable cause, but held the defendant to answer on an assault with a deadly weapon charge. (*Bodner*, *supra*, 42 Cal.App.4th at p. 1803.) Pursuant to section 739, the prosecution filed an information that alleged the dismissed attempted murder charges. On defendant's motion under section 995 to set aside the information, the superior court dismissed the attempted murder charges for lack of probable cause. The prosecution then filed *another* complaint under a new case number alleging the attempted murder counts. After a second preliminary hearing before a new magistrate, the attempted murder charges were again dismissed for lack of probable cause. The (continued)

10

*Violation of Miranda*

*Background*

Before trial, appellant made a motion in limine to exclude statements made to a deputy sheriff after the car in which he was a passenger was stopped on the ground that the statements were taken in violation of *Miranda*, *supra*, 384 U.S. 436. Pursuant to Evidence Code section 402, the trial court conducted a hearing on that motion. Sergeant Dan Freitas of the Santa Cruz County Sheriff's office testified that on August 16, 2012, he had been told at a briefing that appellant was a suspect in a homicide investigation and that the gun used had not been recovered. During the briefing, Sergeant Freitas learned that a patrol officer, Deputy Wright, was following a car in which appellant was traveling. A lieutenant told Deputy Wright to stop the car if he saw a Vehicle Code violation.

Sergeant Freitas left the sheriff's office to try to catch up with Deputy Wright. When he arrived on Highway 17 with his lights and sirens activated, Sergeant Freitas saw that appellant was still in his vehicle. Deputy Wright had been joined by a CHP officer who had arrived in a patrol car. Sergeant Freitas drove by appellant's car and parked in front of it. Two more officers, Deputy Hop and Deputy Fish, arrived on the scene, bringing the total of officers to five. Sergeant Freitas estimated that appellant had been waiting in his car for about 15 minutes. Deputy Wright had parked his patrol vehicle behind appellant's car. Sergeant Freitas got out of his car and walked past appellant's car to where Deputy Wright and the CHP officer were standing. Sergeant Freitas had been

prosecution then tried to file *another* information under section 739, including the attempted murder charges, to which the defendant objected under section 1387. (*Bodner*, *supra*, at p. 1803.) Thus, it was only where the prosecution had filed two complaints and two informations under section 739, and two magistrates and a superior court judge had each found insufficient evidence for the prosecution to proceed on the attempted murder charges that the *Bodner* court ruled further prosecution was barred by section 1387. (*Bodner*, *supra*, at p. 1803.)

11

instructed to take appellant to the sheriff's office to be interviewed regarding the homicide. Sergeant Freitas testified that he was not going to arrest appellant; instead he was "just bringing him down for a conversation about his involvement in the homicide." Sergeant Freitas told Deputy Wright to turn on his digital recorder, which he carried in his uniform. Then, the deputies asked appellant to get out of the car, handcuffed him, and patsearched him for weapons.

The conversation between the officers and appellant was recorded and a recording and transcript were admitted into evidence for purposes of the Evidence Code section 402 hearing. The transcript of the conversation that occurred after appellant was told to get out of the car reflects the following:

"Q: Okay you're not under arrest right now; do you understand that?

"A: Uh-huh.

"Q: Do you understand that you're not under arrest?

"A: Sure[,] I guess.

"Q: We're just gonna put you in handcuffs real fast till we figure this out, okay?

"A: Yeah.

"Q: What do you have court for?

"A: Driving on a suspended.

"Q: That's it? And your court's in San Jose?

"A: Yeah.

"Q: Okay. Are these prescription pills?

"A: Yeah.

"Q: Okay. . . Are they in your name?

"Q: You don't mind if I check your pockets real quick?

"A: Sure.

"Q: What's this?

"A: Methadone.

12

"Q:    Methadone?  How come you keep it packaged like that?

"A:    I . . I. . . . , anyway, I got if [*sic*] from someone else.

"Q:    You got it from someone else?  It's not prescribed to you?

"A:    No, I - I have a methadone prescription.

"Q:    You do?

"A:    Uh-huh.

"Q     But is this your prescription?

"A:    Those actual pills came from a different person.

"Q:    Those pills are from a different person?

"A:    Okay."[6]

Later in the conversation one of the officers asked appellant, "Okay.  What are these bad boys?"  Appellant replied, "Same thing."  One of the officers asked, "Those are methadone as well?"  Appellant responded that he had fallen off a roof and "[b]lew out [his] back."  He said he had "two herniated disks in [his] back."  He explained that was why he was taking the methadone.  The officers had appellant sit down, at which point appellant said, "Sure looks like I'm being arrested for something."  Later, appellant was taken to the police station.

Defense counsel argued that appellant was "clearly in custody.  There [were] a number of officers on the scene.  There was no—his . . . he was handcuffed.  I mean, he even said at the end of the audio that we heard it sure seems like I'm in custody and there was a direct question from the officer about the pills and a follow-up question about the pills.  I think those are—those were purposeful to elicit an incriminating response and I think that fits neatly into what's prohibited by Miranda."

---

[6]    As noted in the statement of facts, a tape recording of appellant's statements to the police was played for the jury.  Violations of *Miranda* occur only upon the admission of unwarned statements into evidence at trial.  (*United States v. Patane* (2004) 542 U.S. 630, 641.)

The trial court denied appellant's motion to exclude his statements. The court ruled that "[t]aking into account the officer's testimony and the CD and the transcript, I do not find that this was a custodial situation at the time that the statement was made . . . ."

Appellant contends that his admission that the methadone pills were not prescribed to him was obtained in violation of *Miranda*, *supra*, 384 U.S. 436, and therefore the entire judgment must be reversed.

The People counter that appellant was not detained for purposes of *Miranda* because appellant was not subjected to custodial interrogation. We are not persuaded.

At the outset we note that although defense counsel did not contemporaneously object to the admission of appellant's statements during trial, appellant has adequately preserved the issue for review.

Evidence Code section 353 states: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion; and [¶] (b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice." (Stats. 1965, ch. 299, § 2, operative Jan. 1, 1967.)

In *People v. Morris* (1991) 53 Cal.3d 152 (disapproved on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1), the defendant moved in limine to exclude the testimony of two witnesses against him on the ground that their proposed testimony was the product of coercive conditions in plea agreements reached with the two witnesses. The trial court denied the motion, and the witnesses testified. The defendant was convicted. He appealed and contended on appeal that his motion in limine should have been granted. The People argued that the defendant had waived the issue

14

because he had failed to renew his objection when the evidence was actually offered at trial. The People argued that the defendant's failure to renew his objection at trial was a failure to comply with Evidence Code section 353. The California Supreme Court disagreed. In finding that the defendant had complied with Evidence Code section 353, the court stated: "[W]e hold that a motion *in limine* to exclude evidence is a sufficient manifestation of objection to protect the record on appeal when it satisfies the basic requirements of Evidence Code section 353, i.e.: (1) a specific legal ground for exclusion is advanced and subsequently raised on appeal; (2) the motion is directed to a particular, identifiable body of evidence; and (3) the motion is made at a time before or during trial when the trial judge can determine the evidentiary question in its appropriate context. When such a motion is made and denied, the issue is preserved for appeal. On the other hand, if a motion *in limine* does not satisfy each of these requirements, a proper objection satisfying Evidence Code section 353 must be made to preserve the evidentiary issue for appeal." (*People v. Morris*, *supra*, at p. 190.) We find that appellant's motion in limine satisfied each of the foregoing requirements.

The *Miranda* court stated that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (*Miranda*, *supra*, 384 U.S. at p. 444.)

A person is in custody for purposes of *Miranda* if he is "deprived of his freedom in any significant way or is led to believe, as a reasonable person, that he is so deprived." (*People v. Taylor* (1986) 178 Cal.App.3d 217, 225.) To put it another way, a person is in custody when he feels he cannot end the interrogation and leave. (*Howes v. Field* (2012) __ U.S. __, __ [132 S.Ct. 1181, 1189-1190].) "Interrogation consists of express questioning or of words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." (*People v. Johnson* (1992) 3 Cal.4th 1183, 1224, citing *Rhode Island v. Innis* (1980) 446 U.S. 291, 300-301.)

15

The test of custody is based on "objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." (*Stansbury v. California* (1994) 511 U.S. 318, 323.)

As the California Supreme Court has summarized the test, whether a person is in custody is an objective test, the pertinent question being whether the person was formally arrested or subject to a restraint on freedom of movement of the degree associated with a formal arrest. (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400.) " '[C]ustody must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances.' [Citation.]" (*People v. Linton* (2013) 56 Cal.4th 1146, 1167.)

In *People v. Aguilera* (1996) 51 Cal.App.4th 1151, this court identified some of the circumstances relevant to an inquiry into whether there has been a custodial interrogation. "Among them are whether contact with law enforcement was initiated by the police or the person interrogated, and if by the police, whether the person voluntarily agreed to an interview; whether the express purpose of the interview was to question the person as a witness or a suspect; where the interview took place; whether police informed the person that he or she was under arrest or in custody; whether they informed the person that he or she was free to terminate the interview and leave at any time and/or whether the person's conduct indicated an awareness of such freedom; whether there were restrictions on the person's freedom of movement during the interview; how long the interrogation lasted; how many police officers participated; whether they dominated and controlled the course of the interrogation; whether they manifested a belief that the person was culpable and they had evidence to prove it; whether the police were aggressive, confrontational, and/or accusatory; whether the police used interrogation techniques to pressure the suspect; and whether the person was arrested at the end of the interrogation. [Citations.]" (*Id.* at p. 1162.) "No one factor is dispositive. Rather we look at the interplay and combined effect of all the circumstances to determine whether

16

on balance they created a coercive atmosphere such that a reasonable person would have experienced a restraint tantamount to an arrest. [Citation.]" (*Ibid.*)

" 'Whether a defendant was in custody for *Miranda* purposes is a mixed question of law and fact. [Citation.] When reviewing a trial court's determination that a defendant did not undergo custodial interrogation, an appellate court must "apply a deferential substantial evidence standard" [citation] to the trial court's factual findings regarding the circumstances surrounding the interrogation, and it must independently decide whether, given those circumstances, "a reasonable person in [the] defendant's position would have felt free to end the questioning and leave" [citation].' [Citation.]" (*People v. Moore* (2011) 51 Cal.4th 386, 395.)

After appellant was found guilty, he brought a new trial motion on the ground that the admission of his statement obtained without a *Miranda* warning resulted in the denial of his constitutional right to a fair trial. In denying the motion the court stated that it had found "that this was an appropriate detention. I do not find that it was prolonged. I had a good faith disagreement with [defense counsel] when he brought this motion as pretrial motion and I have a good faith disagreement with [defense counsel] regarding the motion for a new trial. The detention was appropriate. I do not find that it was prolonged. I do agree with both counsel that the court is able to take into account the totality of the circumstances and the totality of the circumstances involve matters that not only impacted [*sic*]upon this particular case but also upon another investigation that was pending. For officer safety in light of those extenuating circumstances there were handcuffs applied. I do believe that appropriate investigatory questions were asked. I don't find that there was a Miranda violation in this matter in light of all the circumstances presented." It appears to this court that the lower court applied the wrong analysis in this matter.

17

Appellant does not contend that the police conduct in this case was unreasonable under the Fourth Amendment. However, as appellant points out, that is not the question in a Fifth Amendment *Miranda* analysis.

Fifth Amendment *Miranda* custody claims do not examine the reasonableness of the officer's conduct, but instead examine whether a reasonable person would conclude that the restraints used by police were tantamount to a formal arrest. These two distinct analytical concepts may produce different outcomes. (See *United States v. Newton* (2d Cir.2004) 369 F.3d 659, 677 (*Newton*) [officers' actions reasonable under Fourth Amendment but restraints imposed during detention placed defendant in custody for *Miranda* purposes].) As *Newton* explains, "*Miranda's* concern is not with the facts known to the law enforcement officers or the objective reasonableness of their actions in light of those facts. *Miranda's* focus is on the facts known to the seized suspect and whether a reasonable person would have understood that his situation was comparable to a formal arrest." (*Id.* at p. 675.)

The facts adduced at the Evidence Code section 402 hearing show that appellant was in a car that was stopped by an officer in a marked patrol car; the officer stopped his car behind the car in which appellant was traveling. While the officer waited for reinforcements, appellant was directed to wait in his car, a period of confinement that last approximately 15 to 20 minutes. The officer who made the stop was joined by a CHP officer and one more, possibly two more officers in patrol cars. Sergeant Freitas arrived with lights and sirens activated. Sergeant Freitas parked in front of appellant's car such that the car was blocked in. At least two officers approached appellant and asked him to get out of the car. Immediately the officers handcuffed appellant and two officers conducted a patsearch on appellant—the officers were on both sides of appellant searching him while they questioned him.

The People rely on *Berkemer v. McCarty* (1984) 468 U.S. 420 (*Berkemer*), in which the United States Supreme Court held that motorists subjected to routine traffic

18

stops are not entitled to *Miranda* warnings, to argue that this was a routine traffic stop. This was not a routine traffic stop; the *Berkemer* court described a routine traffic stop as follows. "The vast majority of roadside detentions last only a few minutes. A motorist's expectations, when he sees a policeman's light flashing behind him, are that he will be obliged to spend a short period of time answering questions and waiting while the officer checks his license and registration, that he may then be given a citation, but that in the end he most likely will be allowed to continue on his way." (*Id.* at p. 437.) The *Berkemer* court explained that the atmosphere of a routine traffic stop is "substantially less 'police dominated' " than a station house interview because the stop is done in public and the motorist "is confronted by *only one or at most two policemen*." (*Id.* at p. 439, italics added.) Here, although the car in which appellant was traveling was stopped by only one officer, he was told to stay in the car while other officers arrived and then Sergeant Freitas arrived with lights and sirens activated.

As noted, "*Miranda* warnings are not required during the course of a brief detention unless the suspect is placed under restraints normally associated with a formal arrest. When this occurs, *Miranda* warnings are required because the suspect understands the detention is not likely to be 'temporary and brief' and therefore is 'completely at the mercy of the police.' [Citation.]" (*People v. Pilster* (2006) 138 Cal.App.4th 1395, 1404.) "Handcuffing conveys this message because it is a distinguishing feature of a formal arrest." (*Id.* at pp. 1404-1405.) As the United States Supreme Court explained in *Dunaway v. New York* (1979) 442 U.S. 200, handcuffs are considered among "the trappings of a technical formal arrest." (*Id.* at p. 215 & fn. 17; accord, *Newton*, *supra*, 369 F.3d at p. 676 [handcuffing recognized as a hallmark of a formal arrest]; *United States v. Maguire* (1st Cir.2004) 359 F.3d 71, 79 [handcuffs considered one of the most recognizable indicia of traditional arrest]; *United States v. Glenna* (7th Cir.1989) 878 F.2d 967, 972 [handcuffs are restraints on freedom of movement *normally* associated with arrest].)

19

The People cite a case from this court, *People v. Lopez* (1985) 163 Cal.App.3d 602 (*Lopez*), for the proposition that appellant's interrogation was noncustodial. In *Lopez*, this court applied the principles stated in *Berkemer* to find that questioning pursuant to an automobile stop was not custodial interrogation for purposes of *Miranda*. We theorized, "In the case before us, [the] defendant was neither told that he was under arrest nor that he was not free to leave. He was detained during a traffic stop but he was not the driver. Although he was ordered out of the car along with the driver, the latter was first questioned about the nature of his driving. The detention had been relatively brief—it appears less than 15 minutes—at the point when the defendant was questioned, and the questions were asked at the roadside, not a place of isolation. The defendant was about a car-length from [the codefendant] when questioned, so the two of them were apparently able to hear, as well as see, each other. While there were four officers present, they did not congregate around defendant but were dispersed among the three suspects. One officer alone approached and questioned the defendant. The nature of the questioning was investigatory rather than accusatory. Defendant was asked simply whether he was present (as [the codefendant] had stated) when [the codefendant] borrowed the tools, and if he knew their owner." (*Id*. at pp. 608-609.)

Here, in contrast to *Lopez*, when appellant was told to get out of the car after Sergeant Frietas arrived with lights and sirens activated, he was immediately handcuffed and surrounded by at least two officers who were patsearching him while questioning him. Although he was told he was not under arrest, he was not told that he was free to leave. It is unclear where the rest of the officers were, but Sergeant Freitas admitted that there were at least two other officers present at the scene and possibly three more.

Further, the circumstances in *In re Joseph R*. (1998) 65 Cal.App.4th 954 (*Joseph R.*), upon which the Attorney General relies, are not comparable. In that case, police questioned a 14-year-old boy in front of his house about a rock-throwing incident. (*Id.* at p. 957.) The officer asked the boy for consent to conduct a pat-down search,

20

which the boy gave, and specifically told the boy he did not have to answer the officer's questions, and the boy was not arrested for another six weeks. (*Id.* at pp. 957, 961.) Although the officer had placed the boy in handcuffs in the back of the patrol car for a few minutes before removing the handcuffs and then asking questions, the court concluded the boy was not in custody for *Miranda* purposes. (*Ibid.*) In fact, *Joseph R.* makes the point that the fact that a suspect is handcuffed weighs heavily in the analysis of whether a person was subject to a restraint on freedom of movement of the degree associated with a formal arrest. Specifically, the *Joseph R.* court noted, "[t]his is not to say that the minor would not have been in custody for purposes of *Miranda* had he been questioned while he was still in the car and under the officer's control. In that case, the interrogation would have been accompanied by restraints that are normally associated with an arrest, thereby requiring *Miranda* warnings be administered. [Citations.]" (*Id.* at p. 958, fn. 5.)

Here, a reasonable person would conclude that appellant had been placed in custody when officers surrounded him, handcuffed him immediately after he got out of the car, and simultaneously patsearched him while asking him questions. Although the prosecution presented evidence negating the assumption that appellant was in custody— Sergeant Freitas's categorical statement that appellant was not under arrest—"telling a suspect that he is not under arrest does not carry the same weight in determining custody when he is in handcuffs as it does when he is unrestrained." (*Newton*, *supra*, 369 F.3d at p. 676; *United States v. Henley* (9th Cir.1993) 984 F.2d 1040, 1042 [handcuffed suspect entitled to *Miranda* warnings even though agents informed suspect he was not under arrest].) Further appellant was never told that he did not have to answer the officers' questions. Although the detention was fairly brief, appellant was never told that he was being handcuffed for officer safety. Significantly, after the officers finished asking appellant questions they placed him in the back of a police car, at which time appellant said, "Sure looks like I'm being arrested for something."

21

"[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (*Rhode Island v. Innis, supra,* 446 U.S. at p. 301, fns. omitted.) Stated another way, "[t]he questioning prohibited by *Miranda* means '*substantive questions* which portend to develop the facts under investigation.' [Citations.]" (*People v. Patterson* (1979) 88 Cal.App.3d 742, 748.) "In deciding whether police conduct was 'reasonably likely' to elicit an incriminating response from the suspect, we consider primarily the perceptions of the suspect rather than the intent of the police." (*People v. Davis* (2005) 36 Cal.4th 510, 554.)

When Sergeant Freitas testified during the trial, he stated that while he was patsearching appellant he discovered what felt "like a prescription pill bottle." When he asked appellant if they were prescription pills, appellant confirmed that they were, so he left the pills in appellant's pocket. However, when he found a plastic bag with something in it, he removed it from appellant's shirt pocket. Sergeant Freitas described the plastic bag as having "a burned tip to it" and was in fact "kind of double bagged so there [were] two bags around it and both of them had burned tips." Since Sergeant Freitas was asked by the prosecutor if, in his experience, there was a legitimate reason to have methadone packed in "those plastic bags" and he answered that there was not, as soon as Sergeant Freitas discovered the baggie he should have known that any questions he asked appellant about the baggie were likely to elicit an incriminating response. At that point, he was no longer patsearching appellant for officer safety; he was investigating a suspected crime.

Thus, appellant faced a custodial interrogation. The United States Supreme Court fashioned *Miranda* warnings to compensate for the coercive pressures inherent in a custodial interview, and appellant should have received these warnings before the

22

interviewing officer questioned him about the pills packaged in the plastic baggie the officers found while searching appellant.

Finally, "[t]he erroneous admission of statements obtained in violation of *Miranda* is reviewed for prejudice pursuant to *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). [Citations.] Under *Chapman,* reversal is required unless the People establish that the court's error was 'harmless beyond a reasonable doubt.' [Citation.]" (*In re Z.A.* (2012) 207 Cal.App.4th 1401, 1422.) "Under [the *Chapman* ] test, the appropriate inquiry is 'not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.' [Citation.]" (*People v. Quartermain* (1997) 16 Cal.4th 600, 621.)

The People do not address the issue of whether the admission of appellant's statements, if erroneous, was harmless; and we cannot find the admission of appellant's statements taken in violation of *Miranda* to be harmless in this case. The only evidence that some of the methadone that appellant had in his possession was not that which had been prescribed to him came from appellant's statements "I got it from someone else" and "Those actual pills came from a different person." His statements that some of the pills were not his were essential to his convictions. There was no other testimony or evidence supporting that fact, which was required to prove both offenses.[7] Both Health

---

[7] While appellant was apprehended with the methadone, he had a legal prescription for the drugs; his statement that some of the pills came from another person was crucial to his conviction. As the prosecutor told the jury, "I said at the beginning of this case that this was a very simple and straight forward case. And at some level that's exactly the kind of case you saw. It's undisputed that Mr. Tisdale had the pills on him. He said twice I got them from someone else. I got them from another person. That's clearly not his prescription which makes it unlawful for him to have them and that means if he possessed them that's Count 2, possession of methadone, and if he transported them in a vehicle any distance that's transportation, Count 1. The case really can't be any simpler than that. You can literally go back in the deliberation room all agree that those facts are (continued)

and Safety Code sections 11352 and 11350 exempt from their reach transportation of and possession of a controlled substance "upon the written prescription of a physician . . . ." Accordingly, we conclude that the guilty verdicts rendered in this case were attributable to the erroneous admission of appellant's statements taken in violation of *Miranda*.[8]

*Disposition*

The judgment is reversed.

---

true since they quite frankly are not even in dispute by either side and you can vote guilty on those facts alone."

[8]    Appellant filed a supplemental brief challenging two sentencing enhancements imposed under section 667.5, subdivision (b) on the ground that there was insufficient evidence showing that he was either convicted of a felony or served time in state prison between April 17, 2002, and December 29, 2008.  The People concede the issue and suggest that this court strike the sentences for the prior prison term enhancements. However, since we must reverse this case, the issue is moot.

_____
ELIA, J.

WE CONCUR:


_____
PREMO, Acting P. J.


_____
MIHARA, J.