[No. A031194. First Dist., Div. Five. Nov. 25, 1985.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
BARBARA JANE DAY, Real Party in Interest.

COUNSEL

John K. Van de Kamp, Attorney General, Eugene W. Kaster and Kristofer Jorstad, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

William Everett Glass for Real Party in Interest.

OPINION

**HANING, J.**—The People seek a writ of mandate to compel the superior court to reinstate a murder charge dismissed under authority of *Jones* v. *Superior Court* (1971) 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241]. We agree with the People that the murder charge was improperly dismissed.

Real party Barbara Jane Day shot and killed her estranged husband Dennis at the culmination of a domestic quarrel. The magistrate held Day to answer for voluntary manslaughter, but declined to hold her to answer on the companion charge of murder. The People refiled the murder charge in the information, and Day moved to dismiss the allegation under Penal Code section 995. Day argued the magistrate made factual findings fatal to the murder charge, precluding its refiling in superior court under the rule laid down by the *Jones* decision. The superior court agreed and dismissed the charge, in effect forcing the People to proceed only on a charge of voluntary manslaughter. The People challenged the dismissal by this petition for writ of mandate. We stayed real party's manslaughter trial, issued the alternative writ, and heard oral argument. For the reasons set forth below, we grant the peremptory writ.[1]

A.

The issues require us to set forth in some detail the evidence presented at the preliminary hearing. The evidence comprises testimony of investigating officers, a criminalist and autopsy physician, and Day's postarrest statements to police.

At the time of the homicide Day and her husband were separated. Day had custody of the couple's young son Jeffrey, subject to Dennis's rights of

---

[1]Writ review is available to the People. (See *People* v. *Superior Court (Gibson)* (1980) 101 Cal.App.3d 551 [161 Cal.Rptr. 923].)

visitation. On July 28, 1984, Day was supposed to bring Jeffrey to Dennis's home by a certain time in the evening; Dennis and Jeffrey were to go camping the next morning. Day was late and an argument ensued. Dennis eventually told Day to take Jeffrey home with her for the night, and Dennis would pick him up at home at 6 a.m.

When Day and Jeffrey got home, the boy announced he no longer wanted to go camping with his father. Day called Dennis at 3 a.m. with this news, but Dennis insisted on coming over as planned. Day then loaded her .380 Mauser automatic pistol and went to sleep on the living room couch, with the weapon in her purse within reach. Day told police she habitually loaded the pistol at night, slept with it nearby, and unloaded it in the morning. She began the habit for her and Jeffrey's protection, when a mental patient wandered away from a local hospital and was found sleeping naked in a bathtub in a nearby home under construction. Day offered no explanation why she slept on the couch facing the front door of her home, through which Dennis would presumably enter, instead of in her bedroom.

Dennis arrived as scheduled and let himself in without waking Day, evidently with his own key. Day woke up to the sound of Dennis shouting and screaming at her. The couple began to argue. Dennis was "yelling, screaming, ranting and raving;" he threatened to kill Day if she didn't "shut up and sit down," and told her he would "bash her face in so her own mother wouldn't recognize her." The argument, in Day's words, "went on and on and on and on and I just couldn't go on." Dennis "got that look in his eye" which Day had seen "one too many times" when Dennis had beaten her in the past. She reached into her purse and pulled out the pistol.

At this point Dennis was standing between Day and the front door, about eight to ten feet away. When Day pulled the gun Dennis advanced toward her. According to one of her postarrest statements, Day pointed the pistol in Dennis's direction, closed her eyes, and fired; in another statement Day said she "aimed" the weapon in one direction to avoid shooting in another, presumably to avoid hitting Jeffrey who was in the room at the time. Day claimed she fired after Dennis started toward her, but also said he was eight to ten feet away *when she fired.* Day fired two shots: one hit the front doorjamb, and the other struck Dennis in a rib and deflected into the aorta, killing him in a matter of moments. Day claimed she acted out of fear that her life was in danger.

Although Dennis was advancing upon Day at the moment of the shooting, he had not actually struck her.[2] He brandished no weapon and none was

---

[2] Earlier in the argument he may have "pushed" Day or "shoved" her.

found on or near his body. The record indicates a prior history of wife-beating, however, and Dennis stood six feet two inches and weighed two hundred pounds; Day stood five feet nine inches and weighed ninety to one hundred pounds.

The facts thus far are taken largely from Day's postarrest statements to police. They strongly suggest the killing occurred without the malice necessary for murder, either in self-defense or the heat of passion. However, certain physical evidence, related by investigating officers, a criminalist, and the autopsy physician, is inconsistent with Day's account in significant respects.

The criminalist testified that the entry wound was in Dennis's *back*, about halfway between the midline and the shoulder. Furthermore, the wound bore gunpowder stipplings, establishing that the fatal shot was fired from a distance of six to eighteen inches. A close-range wound in the back does not immediately harmonize with Day's claim that she fired on Dennis as he was several feet away and advancing toward her. The point was developed on cross-examination of several witnesses. An investigating police officer admitted it was "possible" for a six-foot man to traverse "six to eight feet" in "one or two steps." The pathologist and the criminalist both admitted the back wound was "consistent" with the inference that Dennis advanced upon Day, covered the intervening distance, and turned or swung to the left before she fired at close range. Day, however, never mentioned in any of her statements that Dennis traversed the intervening distance and turned before she fired the shot. The pathologist admitted it was also "possible" that the bullet was fired straight into the back while Dennis was not turning or swinging, but facing away.

Day also told police Dennis "immediately collapsed" when hit, and had "fallen toward the front door in a crouched position." Dennis's immediate collapse was confirmed by the pathologist's opinion. Assuming, arguendo, the defense theory that Dennis covered the entire distance to where Day was standing, the evidence poses another inconsistency. Since Day claimed her husband "immediately collapsed" when shot, his body should have been found near Day's position, by the couch. This would be consistent with the close-range gunshot wound. Instead the body was found inside the front door some 12 to 14 feet from the couch. The defense theory offered to explain the evidence of the close proximity of the gunshot wound is therefore inconsistent with the position of the body.

The district attorney charged Day with both murder and voluntary manslaughter in the complaint.[3] At the preliminary hearing, Day sought to de-

---

[3] The complaint also charged a drug offense not pertinent to these proceedings.

feat a holding order on either charge by asserting the exonerating defenses of self-defense and defense of habitation. The magistrate rejected defense of habitation as a matter of law, on the theory that Dennis was legally on the premises to exercise visitation rights, and was therefore not an "intruder." He then indicated self-defense posed factual issues reserved for the trier of fact. He also noted there was "substantial evidence that the setting in which [the killing] took place was argument, heat of passion," and indicated an argument in favor of a holding order for murder would be an "unnecessary argument" that "doesn't seem to relate to my view of the evidence." He held Day to answer for voluntary manslaughter only, and made these remarks: "[T]he evidence [of self-defense] in my view is of a nature that while it may well be adequate for a finder of fact at trial to hold off on a finding of guilt beyond a reasonable doubt, it's not a strong enough case on the evidence . . . simply not adequate to prevent a holding order on the homicide given the level of proof that applies to preliminary hearing[s]. [¶] Accordingly, I'm going to hold the defendant to answer for the felony of voluntary manslaughter . . . finding adequate evidence to form a strong suspicion that the crime . . . of voluntary manslaughter has been committed. [¶] [I]t was quite clear that the contested facts lay more in the area of the defenses than the actual death of Mr. Day or at whose hands he died. The issues are complex . . . . [The] issues of reasonableness of force, reasonableness of fear, great bodily injury and the like are jury issues and not issues to be lightly taken from a jury."

The magistrate refused a holding order for murder, but made no other remarks pertinent to the evidence of that charge save those just quoted above.

The district attorney refiled the murder charge in the information. Day moved to dismiss under Penal Code section 995, arguing that the magistrate had made a factual finding that she acted without malice, a finding fatal to the murder charge which barred its refiling under the *Jones* doctrine. The superior court agreed. Admitting the question of whether the magistrate made *Jones* findings was "not altogether clear," the court apparently construed the record as containing an implied finding of fact that Day acted without malice. Quoting the magistrate's conclusion that the evidence was sufficient for manslaughter, the superior court declared, "It would have been helpful if the Magistrate had further said, 'I find no evidence of malice.' [¶] But if he had used those words what, if anything, would he have added to his earlier finding. . . . The Magistrate knew that malice . . . is of course an essential ingredient of the crime of murder." The court reasoned that "[o]bviously the Magistrate *impliedly rejected* the People's contention that the record showed malice, because had he so found, Murder would have been the proper holding order. *Admittedly it would have been*

*a better record, had the magistrate been more specific in his findings."* (Italics added.)

Forced to proceed only on a manslaughter count, the People brought this petition for writ of mandate. ■ They contend that the magistrate made no factual findings within the meaning of *Jones,* and the dismissal was therefore inappropriate. The People claim they are entitled to refile the murder charge under the governing law, notwithstanding the magistrate's refusal to include the offense in the holding order.

### B.

■ An information may allege an offense not included in the magistrate's commitment order if the unnamed offense (1) arises from the transaction that was the basis for the commitment on the related crime and (2) is "shown by the evidence taken before the magistrate to have been committed." (Pen. Code, § 739; *Parks* v. *Superior Court* (1952) 38 Cal.2d 609 [241 P.2d 521].) In *Jones* v. *Superior Court, supra,* 4 Cal.3d 660, the Supreme Court imposed an additional limitation on the prosecutor's ability to refile unnamed offenses: if the magistrate has determined as a matter of fact that the unnamed offense did not occur, then the offense is not "shown by the evidence to have been committed." (*Id.,* at p. 666.) Thus, if the magistrate makes "material factual findings" which prove fatal to the offense by negating any possibility that it occurred, the prosecution may not ignore those findings and refile the charge. (*Ibid.; People* v. *Farley* (1971) 19 Cal.App.3d 215, 221 [96 Cal.Rptr. 478].)

■ The crux of the *Jones* decision is the distinction between a magistrate's factual findings inimical to the charge, and a magistrate's legal conclusion regarding the sufficiency of the evidence presented. In the former situation the magistrate determines as a matter of fact there is no possible evidentiary support for the charge. In the latter the magistrate accepts and considers the evidence amassed by the prosecution, but concludes that it is insufficient to establish the probable cause required to justify inclusion of the offense in the holding order. (*Jones* v. *Superior Court, supra,* 4 Cal.3d at pp. 665-666; *People* v. *Farley, supra,* 19 Cal.App.3d at p. 221.) A factual finding binds the prosecutor from refiling the charge in superior court; a legal conclusion does not. The People may refile a transactionally related charge if they can satisfy the superior court that the evidence is legally sufficient to support probable cause, notwithstanding the magistrate's legal conclusion to the contrary. (*People* v. *Farley, supra,* at pp. 220-221; *Dudley* v. *Superior Court* (1974) 36 Cal.App.3d 977, 982 [111 Cal.Rptr. 797].)

*Jones'* distinction between a factual finding and a legal conclusion is clear enough in the abstract, but has posed some difficulty in its practical imple-

mentation. Experience has demonstrated that it is not always easy to apply a strip of appellate litmus to a magistrate's record remarks and distinguish between evidentiary evaluation and factual determination. As the *Dudley* court complained, "Our difficulty in finding clear guidance from the *Jones* opinion arises in part because of the unusually simple and clear-cut factual issue in that case, and the unusually specific finding made by the magistrate . . . ." (*Dudley* v. *Superior Court, supra,* 36 Cal.App.3d at p. 981.) Indeed, the *Jones* facts are probably the most extreme example of "material factual findings" fatal to a charge. The magistrate disbelieved an alleged rape victim's testimony on the issue of lack of consent, an essential element of the corpus delicti. From this lack of credibility the magistrate determined as a matter of fact that the complaining witness in fact consented to sexual intercourse, and specifically found that no nonconsensual intercourse took place. The People were thus barred from refiling the charge because it lacked evidentiary support.

As noted in *Dudley,* not all cases hinge upon a magistrate's explicit refusal to believe an essential witness. Typically, a magistrate does not make specific findings of fact recited with talismanic reference to the *Jones* decision; rather, "the magistrate's remarks leave considerable room for interpretation, as is often true of the impromptu statements of lawyers and judges." (*Dudley* v. *Superior Court, supra,* 36 Cal.App.3d at p. 981.)

The *Jones* decision does not provide guidelines for the interpretation of magisterial remarks. Subsequent decisions have wrestled with the question of whether a particular magistrate made a factual finding fatal to the charge, or whether he or she simply accepted the evidence presented as true but found it legally insufficient. The problem has frequently arisen in the context of the issue now before us: whether a magistrate found as a matter of fact that the accused killed without malice, or whether the evidence of malice was considered legally insufficient to support a murder allegation. (*Walker* v. *Superior Court* (1980) 107 Cal.App.3d 884 [166 Cal.Rptr. 209]; *Dudley* v. *Superior Court, supra,* 36 Cal.App.3d 977.)

The facts of *Dudley* are instructive. There the magistrate first recited that there had to be either express or implied malice for murder, then stated " '[t]here is no evidence . . . from which the Court can conclude [that] either express[] or implied malice existed in this case.' " (*Dudley* v. *Superior Court, supra,* 36 Cal.App.3d at p. 980.) The Court of Appeal concluded that this language was not a factual finding of a lack of malice fatal to the murder charge, but was merely the magistrate's expression of a legal conclusion that the evidence of malice was insufficient. The court noted there was evidence from which a reasonable inference of malice could be made, but the magistrate indicated no disbelief or rejection of that evidence.

The phrase "there is no evidence from which the court may conclude malice existed" was not a specific finding of fact to the effect that a murder never occurred, but was only a conclusion that evidence presented was insufficient.

■ The remarks of the magistrate below are of similar import to those in *Dudley,* and cannot be considered express factual findings of an absence of malice. The magistrate only indicated the evidence of murder was insufficient. Nothing in his comments can be interpreted as a factual finding that Day killed Dennis without malice. At best, they indicate the magistrate formed the ultimate, legal conclusion that the evidence was insufficient to show probable cause that a murder was committed, but sufficient to show manslaughter with the question of self-defense left to the trier of fact. As we shall explain below, there was evidence presented that supports the inference of malice; the magistrate indicated no disbelief or rejection of the evidence and made no other sort of factual finding that would bar the filing of the murder charge under *Jones.*

Day argues, however, that (1) the magistrate's refusal to return a holding order for murder constitutes an express factual finding negating malice, and (2) if not the magistrate made an "implied" factual finding.

Day's first argument is without merit. A mere refusal to hold to answer does not amount to a factual determination fatal to the charge. This position, similar to the one advanced in *Dudley,* ignores the fundamental distinction between a factual finding and a legal conclusion. To accept the position would be to destroy the distinction and impose factual findings in every case in which a holding order was denied the People.

In the alternative, Day argues that the magistrate made an "implied" factual finding. The superior court agreed, but seemed to base its ruling on the assumption that because the magistrate failed to hold to answer for murder, he must have determined the absence of malice as a matter of fact. This premise, we conclude, is erroneous. There is nothing in the record of the preliminary hearing from which an "implied" finding of fact may be inferred. Moreover, we seriously question whether "implied findings of fact" are authorized by *Jones,* except under narrow circumstances not presented by this case.

The concept of an implied finding of fact finds no mention in the *Jones* opinion. In discussing the prosecutor's inability to file a charge which the magistrate found never occurred, the Supreme Court stated that the "district attorney [cannot] ignore the magistrate's findings of *fact* and charge the defendant with an offense or offenses which the magistrate has *expressly*

found never took place." (*Jones* v. *Superior Court, supra,* 4 Cal.3d at p. 666, italics in original and italics ours, respectively.) Day's "implied finding" argument relies instead on *Walker* v. *Superior Court, supra,* 107 Cal.App.3d 884, in which Division One of this court recognized the concept of an "implied" *Jones* finding.

In *Walker* an Oakland liquor store owner was charged with murder for the shooting death of a patron who had previously threatened the owner with death, and who was in the act of reaching for a weapon. The magistrate did make some factual findings under *Jones,* but the findings fell just short of being fatal to the murder charge. The magistrate found (1) that Walker knew of the victim's bad reputation; (2) that the victim threatened to kill Walker shortly before the shooting; and (3) that Walker was in fear of his personal safety. By themselves, these findings were insufficient to negate malice; the *Walker* court, however, concluded that the necessary additional finding, that the defendant acted under an honest belief in the necessity of deadly force to defend against imminent peril to his life, could be implied from the findings actually made by the magistrate.

Under the narrow circumstances presented in the *Walker* case, an implied finding may be appropriate. There had been no evidence presented to controvert Walker's claim of self-defense. The magistrate made three factual findings of a foundational nature, which led inexorably to the implication of the final finding that Walker acted under an honest belief in the necessity of deadly force to protect his life. The *Walker* panel was quick to note that the finding could be inferred from the clear, uncontroverted state of the evidence, without the guesswork previously condemned by Division Three of this court in *People* v. *Superior Court (Gibson), supra,* 101 Cal.App.3d 551.

The *Gibson* court, after agreeing with *Dudley's* assessment of the practical problems of the *Jones* rule, observed that the comments of Gibson's magistrate "were a mixture of suggestions about his factual findings and statements about his conclusions concerning reasonable cause. The trial court attempted to guess which witnesses the magistrate found doubtful, and having made its guess felt bound by the magistrate's findings. But where guesswork is required to determine what the magistrate found, there is no finding worthy of the deference required by the *Jones* decision." (*People* v. *Superior Court (Gibson), supra,* 101 Cal.App.3d at p. 554.) Guesswork compels the reviewing court to "abdicat[e] its review function in favor of detective work concerning the magistrate's actions." (*Ibid.*)

Guesswork is all that the superior court was left with in this case. The court speculated that the magistrate meant to make factual findings inimical

to malice, and declared it would have been "better" and the record "clearer" if the magistrate had actually stated what was on his mind. The court's speculation read into the record a factual determination never expressly made by the magistrate.[4] Far from presenting the certainty of the *Walker* record, this record exemplifies the ambiguity requiring the sort of speculation disapproved in *Gibson*. The implied factual finding was inappropriate.

A factual finding fatal to a criminal allegation, which prevents the prosecution from even filing the charge, should not be established by guesswork. Superior courts reviewing Penal Code section 995 motions, and appellate courts resolving extraordinary writ petitions, should not be reviewing the impromptu, often spontaneous remarks of magistrates and forced to speculate between implied factual findings and legal conclusions. Absent additional guidance from our Supreme Court we conclude that the notion of implied *Jones* findings is suspect and should be afforded no judicial recognition, except under the limited circumstance exemplified by *Walker*.[5]

A few simple measures could help to alleviate the problem of magisterial interpretation. If a party desires a *Jones* finding, it is easy enough to ask for one in explicit terms. The magistrate can then make an explicit finding of fact if warranted. In so doing, the magistrate can recite that he or she makes the finding pursuant to the *Jones* decision. The use of talismanic phraseology does tend toward a certain mechanical inflexibility, but seems eminently more sensible than the semantic exercises in which reviewing courts are asked to engage. It seems a waste of judicial resources to belabor

---

[4] The court's speculation also rested on the erroneous legal assumption that a rejection of the murder charge necessarily implied a factual finding adverse to malice.

[5] The Supreme Court has evidently never addressed the question of implied *Jones* findings. In the recent decision in *People* v. *Slaughter* (1984) 35 Cal.3d 629 [200 Cal.Rptr. 448, 677 P.2d 854], the court reviewed its line of *Jones* cases in terms suggesting factual findings must be express, but without directly resolving the issue. (*People* v. *Slaughter, supra,* at pp. 638-639.) The court discussed *Jones; People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]; *Pizano* v. *Superior Court* (1978) 21 Cal.3d 128 [145 Cal.Rptr. 524, 577 P.2d 659]; and one Court of Appeal decision, *People* v. *Farley, supra,* 19 Cal.App.3d 215. The court did not mention *Dudley, Walker* or *Gibson.*

The Supreme Court has also never directly addressed another problem that frequently arises in *Jones* cases. The superior court in the instant case opined that had the magistrate said "I find no evidence of murder" this would have amounted to an express factual finding negating malice. The question is not so clear. The court has declared that "a finding of lack of probable cause, unsupported by factual findings, is reviewed as an issue of law." (*People* v. *Slaughter, supra,* 35 Cal.3d at p. 639.) Thus, the following are legal conclusions of the magistrate: that the evidence is "too weak" (*People* v. *Beagle, supra,* 6 Cal.3d at p. 457); that the People failed to prove malice (*Pizano* v. *Superior Court, supra,* 21 Cal.3d at p. 133); and of course the explicit phraseology that the evidence is "insufficient." (*People* v. *Farley, supra,* 19 Cal.App.3d at p. 219.) But what of comments such as "There is no evidence" or "I find no evidence" of an essential element of the crime? As in this case and in *Dudley,* such comments are advanced as findings of fact, in perhaps a natural response to the *Jones'* lack of precise guidelines.

appellate courts and superior courts with motions and petitions which can easily be avoided by precisely worded requests and similar magisterial replies.

We have concluded the magistrate made no express factual finding fatal to the murder charge, and that an implied finding is inappropriate under the facts of this case. *Jones* therefore presents no bar to refiling of the charge in the information. Thus, the People are free to press the charge if it is transactionally related to the manslaughter offense and supported by the evidence presented at the preliminary hearing. There is no question of transactional relationship; the ultimate question is whether the murder charge finds evidentiary support in the record.

## C.

 The People contend the murder charge is supported by the evidence. Day argues to the contrary. The superior court, after concluding the charge was barred by *Jones,* nevertheless added to its ruling the conclusion that there was no evidence of the malice element of murder presented to the magistrate. Although the evidence displays what appears to be a credible defense of self-defense, we must conclude that the evidence also supports a credible inference of malice, sufficient to supply the necessary probable cause.

 "Probable cause" is defined as " 'such a state of facts as would lead a [person] of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused.' " (*People* v. *Uhlemann* (1973) 9 Cal.3d 662, 667 [108 Cal.Rptr. 657, 511 P.2d 609].) A charge will not be dismissed for lack of probable cause "if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].)

 The parties dispute whether the evidence shows probable cause of the requisite element of malice. A rebuttable presumption of malice arises from the evidence showing that Day took her husband's life with the use of a deadly weapon. (*Jackson* v. *Superior Court* (1965) 62 Cal.2d 521 [42 Cal.Rptr. 838, 399 P.2d 374].) The presumption of malice is rebutted by justifying or mitigating circumstances. (*Ibid.*) Although this is usually accomplished at trial, in the rare case the uncontroverted evidence presented at the preliminary hearing may establish a nonmalicious killing. In such cases there is literally no evidence of malice and a murder charge may not lie. However, the evidence of a lack of malice must be both uncontroverted and sufficient as a matter of law to overcome the malice presumption. (See

*Walker* v. *Superior Court, supra,* 107 Cal.App.3d 884; *Roads* v. *Superior Court* (1969) 275 Cal.App.2d 593, 597-600 [80 Cal.Rptr. 169]; *People* v. *Garcia* (1968) 265 Cal.App.2d 94, 97-98 [71 Cal.Rptr. 102].)

Day argues that this case is akin to *Walker, Roads,* and *Garcia,* where the uncontroverted evidence established self-defense and there was no evidence upon which to base an inference of malice. Her argument must fail. The evidence in this case does not paint the sort of clear-cut picture as that in the *Walker* group of cases. The evidence that Dennis was shot in the back at close range is alone sufficient to counteract the self-defense claim and raise the inference of malice. It may be inferred that Day shot her husband in the back as he faced away from her during the argument.[6]

Furthermore, Day's version of events is contradicted by the physical evidence. According to Day, Dennis was 8 to 10 feet away and facing her *when she fired;* yet the gunshot wound in his back showed Dennis to be no more than 18 inches from the weapon's muzzle. If we accept the defense theory, unarticulated by Day herself, that Dennis covered the distance to his wife just before the shot was fired, Day's description of Dennis' immediate collapse would place Dennis' body near Day's position at the time of the shooting. Instead, Dennis was found 12 to 14 feet away. The defense theory seems to be this: Dennis advanced on his wife as she fired; reached her and turned 135 degrees to the left so as to be hit halfway across the right portion of his back; then returned a distance of a dozen feet back the way he came before collapsing to his knees. This may be a plausible description of events capable of full proof at trial; on this record, however, we cannot accept this theory as a matter of law. Given the close-range wound in the back and the other inconsistencies noted, it is also plausible Day shot her husband with malice and fabricated her version of the shooting.

The evidence of malice may be far from overwhelming, but " '[e]vidence that will justify a prosecution need not be sufficient to support a conviction. . . .' " (*Taylor* v. *Superior Court* (1970) 3 Cal.3d 578, 582 [91 Cal.Rptr. 275, 477 P.2d 131], overruled on other, unrelated grounds, *People* v. *Antick* (1975) 15 Cal.3d 79, 92 [123 Cal.Rptr. 475, 539 P.2d 43].) Sufficient evidence of malice is present, providing some rational ground to uphold the murder charge. The evidence is neither uncontroverted nor sufficient as a matter of law to substantiate the claim of self-defense. This type of unusual factual scenario does not easily lend itself to resolution as a matter of law

---

[6]Although the pathologist opined the bullet was not fired from a right angle to the plane of the back, he said only that the bullet was fired from some angle. His testimony leaves ample room for the inference of a malicious shooting in the back at close range, with the weapon held at less than a right angle.

prior to trial. Since the murder charge is supported by the evidence presented to the magistrate, the People are entitled to allege and bring Day to trial on the charge. Whether she acted in self-defense is a question to be resolved at that trial.[7]

Let a peremptory writ of mandate issue commanding the Superior Court of Contra Costa County to vacate its order dismissing the charge of murder, and to enter a new and different order reinstating the charge. The stay of the manslaughter trial of real party Barbara Jane Day shall remain in effect until the finality of this decision.

Low, P. J., and King, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied March 12, 1986.

---

[7]Of course, nothing in this opinion is meant to express an opinion on the merits of Day's defense.