Filed 4/28/15  P. v. Moore CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>GARY MOORE,<br><br>        Defendant and Respondent. | A142926<br><br>(San Francisco City and County<br>Super. Ct. No. 222452) |

Defendant Gary Moore was charged by information with, inter alia, two counts of attempted robbery (Pen. Code, § 211, 664),[1] battery with serious bodily injury (§ 243, subd. (d)), and assault with a firearm (§ 245, subd. (a)(2)) with a great bodily injury enhancement (§ 12022.7, subd. (a)).  Each of the attempted robbery counts also included an enhancement allegation that Moore had personally and intentionally discharged a firearm, which proximately caused great bodily injury (§ 12022.53, subd. (d)).  The People appeal from a superior court order granting defendant Gary Moore's section 995 motion to set aside the great bodily injury allegations.  We reverse.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Moore was originally charged by complaint with seven felony offenses.  In counts one and two, he was charged with attempted robbery (§ 211, 664) against two individuals, Fath Yin and Lily Yam.  Each of the first two counts included an allegation

---

[1] Undesignated statutory references are to the Penal Code.

1

that Moore had personal y and intentionally discharged a firearm, which proximately caused great bodily injury (§ 12022.53, subd. (d)).

At the preliminary hearing, San Francisco Police Officer Carlos Padilla testified that, at about 3:00 a.m. on April 8, 2013, he responded to reports of a shooting at Happy Donuts on Bayshore Boulevard in San Francisco. At San Francisco General Hospital (SFGH), Padilla interviewed Yin, who said that he had been in the back of the store making muffins when he heard a scream from the front counter. Yin walked to the front counter and saw a man, later identified as Moore, kneeling over Yin's wife (Yam), demanding money from the register, and holding a firearm to Yam's head. Moore next pointed the firearm at Yin, again demanding "all the money." Yin opened the register and attempted to comply with Moore's demands. When Moore returned the gun to Yam's head, Yin grabbed a knife from a nearby table, ran towards Moore and stabbed him twice. As Moore ran towards the entrance, Yin stabbed Moore once again. The two fell to the ground and began wrestling. During the struggle, three shots were fired, and Yin immediately felt pain in his left forearm, the left side of his back, and the right side of his chest.

Yin, who was bleeding from a wound on his left forearm, was treated by paramedics on the scene and then transported to SFGH by ambulance. Photographs of Yin's injuries and Yin's medical records were entered into evidence. The records showed that Yin arrived at SFGH around 3:30 a.m. Upon admission, Yin was observed to have tachycardia and hypertension, and was given intravenous fluids.[2] After "[Yin's] condition ha[d] improved," his wounds were cleaned and packed with gauze. Yin suffered two gunshot wounds, one on the left side of his back and another to his left arm. He also suffered a "tiny abrasion" to his chest, near his right nipple. The wound on Yin's back is described as a "through-and-through wound . . . through skin and soft tiss[ue] only." The holes were measured at one centimeter and two centimeters. Yin also

---

[2] Yin's blood pressure was measured at 161 over 94. It was also noted that he had a "[p]ast medical history" of hypertension.

2

suffered a "graze wound" to his left arm, measuring five to 10 centimeters. The medical records repeatedly described both wounds as "superficial," as they involved subcutaneous tissue only and did not penetrate any internal organs.

While at the hospital, Yin indicated he was pain free. He was reported to be "alert and oriented" and "in no acute distress." Yin's tetanus vaccine was not up to date, and a tetanus shot was ordered and administered. Although the records are ambiguous and the parties disagree regarding precisely when Yin was discharged, it appears that Yin was discharged from SFGH no later than three and a half hours after he arrived. He was instructed to visit SFGH's wound care clinic within the next two days "to have [his] back wound assessed and the dressing changed." No antibiotics or painkillers were prescribed. Yin was told to use Tylenol or Advil if he experienced pain.

The magistrate held Moore to answer on five felony counts, including the two attempted robberies alleged in counts one and two, but discharged the great bodily injury allegations. The magistrate stated: "I have reviewed [Yin's medical records] and . . . the complete fortuitous, serendipitous, miraculous set of circumstances that the victim in the case wasn't hurt, there was not even stitching. The through and through injuries, there were skid mark type injuries with the bullets but it looks like this gentleman was discharged from [the] emergency room, sent home and there was no follow-up care, there wasn't even stitching *so I don't see there was great bodily injury that can be supported*. [¶] . . . [¶] And the law isn't that if you get shot, it's automatically great bodily injury. If you've got a case to show me, I'll look at that but there isn't a case that says that. He was totally fortunate." (Italics added)

Thereafter, the People filed a seven-count information which included, with respect to both counts one and two, the enhancement allegation that Moore had discharged a firearm, which caused great bodily injury (§ 12022.53, subd. (d)). The People also added a new count six, charging Moore with battery with serious bodily injury (§ 243, subd. (d)) and a new count seven, charging assault with a firearm (§ 245, subd. (a)(2)) with a great bodily injury enhancement (§ 12022.7, subd. (a)).

Based on its review of the evidence presented at the preliminary hearing, the trial court granted Moore's section 995 motion to set aside the great bodily injury enhancements and count six. The court explained: "I don't get to whether it's a finding of fact or not because, to be honest, I don't find this [great bodily injury] here. . . . [¶] . . . [¶] . . . Yin was in the hospital for less than an hour-and-a-half. He was released with basically bandaging. He was given no pain killers or prescriptions. He himself said that he had no pain, and [the People] presented no evidence that his ability to work or to move his body was affected by his wounds." The People filed petitions for writ of mandate and supersedeas, which we denied. The People also filed a timely notice of appeal, pursuant to section 1238, subdivision (a)(1), from the order granting Moore's section 995 motion.[3]

## II.    DISCUSSION

The People assert that the great bodily injury allegations are supported by sufficient evidence and that the trial court erred in setting aside count six, as well as the great bodily injury enhancement allegations, applicable to counts one, two, and seven. We agree.

A.    *Factual Findings Versus Legal Conclusions*

We must turn first to the parties' disagreement about whether the magistrate made findings of fact or a conclusion of law. Moore maintains that the magistrate made binding determinations, based on "his own factual assessment of Yin's wounds." The People contend the magistrate made no factual findings. Accordingly, they were entitled to subsequently file great bodily injury enhancement allegations and count six, notwithstanding the magistrate's refusal to include the injury allegations in the holding order.

---

[3] Section 1238, subdivision (a)(1) permits the People to appeal "[a]n order setting aside all or any portion of the . . . information . . . ." "[S]ection 1238, subdivision (a)(1), authorizes an appeal by the People from an order setting aside one or more counts of an indictment that contains other counts not set aside." (*People v. Shirley* (1978) 78 Cal.App.3d 424, 430.)

4

"The purpose of [a] preliminary hearing is to determine whether there is probable cause to conclude that the defendant has committed the offense charged. [Citations.]" (*Galindo v. Superior Court* (2010) 50 Cal.4th 1, 8; § 872.) " 'Within the framework of his limited role, . . . the magistrate may weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses. [Citation.] In other words, in assisting him in his determination of "sufficient cause," the magistrate is entitled to perform adjudicatory functions akin to the functions of a trial judge. . . .' [Citation.]" (*People v. Slaughter* (1984) 35 Cal.3d 629, 637.) But "the magistrate is not a trier of fact. He does not decide whether defendant committed the crime, but only whether there is ' "some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." ' [Citation.] If the record shows strong and credible evidence of defendant's guilt, the magistrate may reasonably assume the possibility of his guilt. Thus in many cases he will not find it necessary to resolve all conflicts in the evidence, in order to find probable cause to hold the defendant for trial. The magistrate's power to decide factual disputes exists to assist him in his determination of sufficient cause [citation]; if he can determine that issue without resolving factual conflicts, he may do so." (*Id.* at pp. 637–638, fn. omitted.)

"A mere refusal to hold to answer does not amount to a factual determination fatal to the charge." (*People v. Superior Court* (*Day*) (1985) 174 Cal.App.3d 1008, 1017.) The district attorney, in appropriate circumstances, has the authority to refile allegations dismissed from the complaint before the magistrate. Section 739 provides, in relevant part: "When a defendant has been examined and committed, as provided in Section 872, it shall be the duty of the district attorney of the county in which the offense is triable to file in the superior court of that county within 15 days after the commitment, an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed."

"Under section 739 review, when the magistrate makes express findings of fact, the reviewing court is bound by such findings if supported by substantial evidence. If

5

however, the magistrate renders no findings, the reviewing court may find the dismissal erroneous as a matter of law whenever the evidence provides a rational basis for believing that the defendant is guilty of the offense." (*People v. Slaughter, supra,* 35 Cal.3d at p. 633.) "The character of judicial review under section 739 depends on whether the magistrate has exercised his power to render findings of fact. If he has made findings, those findings are conclusive if supported by substantial evidence. [Citations.] If he has not rendered findings, however, the reviewing court cannot assume that he has resolved factual disputes or passed upon the credibility of witnesses. A dismissal unsupported by findings therefore receives the independent scrutiny appropriate for review of questions of law." (*Id.* at p. 638.)

"[I]n cases where the magistrate makes factual findings which are fatal to the asserted conclusion that a particular offense was committed, the district attorney may not recharge that offense in the information. A clear example of this would be where the magistrate expresses disbelief of a witness whose testimony is essential to the establishment of some element of the corpus delicti. [¶] Where, however, the magistrate either expressly or impliedly accepts the evidence and simply reaches an ultimate legal conclusion therefrom—i.e., whether or not such evidence adds up to reasonable cause that the offense had been committed—such conclusion is open to challenge by inclusion in the information which action is thereafter subject to attack in the superior court under [section 995], and ultimately to appellate review." (*People v. Farley* (1971) 19 Cal.App.3d 215, 221 (*Farley*).)

*Jones v. Superior Court* (1971) 4 Cal.3d 660 (*Jones*) is instructive. The defendants in that case were charged by complaint with rape, oral copulation, and sodomy. At the conclusion of the preliminary hearing, at which the defendants and victim testified to very different accounts of the events, the magistrate found that the victim consented to intercourse and that neither oral copulation nor sodomy had taken place. (*Id.* at pp. 663–664.) Specifically, the magistrate stated: "I believe that the girl went with them willingly for the purpose of having sexual intercourse in the mountains." (*Id.* at p. 663.) The defendants were held to answer only on the charge of statutory rape,

6

which had not been charged in the complaint but was shown by the evidence. Thereafter the prosecutor filed an information containing only the original charges. The trial court denied the defendants' motion to set aside the information, pursuant to section 995. (*Jones*, at p. 664.)

In granting the defendants' petition for a writ of prohibition, our Supreme Court made clear that it did so because the magistrate had made "material factual findings" which negated any possible conclusion that the offenses charged had, in fact, been committed. (*Jones, supra,* 4 Cal.3d at pp. 663, 666.) "[S]ince the magistrate found, as a matter of fact, that [the victim] consented to intercourse and that no acts of oral copulation or sodomy occurred, it follows that those offenses were not shown by the evidence to have been committed ([§ 739]), and should not have been included in the information." (*Id.* at p. 666.) It emphasized, however, that when a magistrate merely makes a legal conclusion that "the evidence failed to show probable cause that the offense had been committed," such a conclusion can be challenged by including additional charges in the information, so long as that challenge is made "within the context of the magistrate's findings on the evidence." (*Id.* at pp. 665–666.)

In contrast, in *Farley, supra,* 19 Cal.App.3d 215, the magistrate dismissed two counts charging sale of marijuana and LSD, saying that " 'after the hearsay is stricken, the evidence that goes to those is insufficient.' " (*Id.* at pp. 219, 221.) Because no factual findings were made, the reviewing court was entitled to review the preliminary hearing transcript and conclude that the magistrate erred in finding a lack of reasonable and probable cause to show the disputed offenses had been committed. (*Id.* at pp. 221–222; see also *Day, supra,* 174 Cal.App.3d at pp. 1014, 1017 [magistrate did not make factual findings of an absence of malice when he refused to return a holding order for murder, stating " 'it's not a strong enough case on the evidence . . . simply not adequate' "].)

Likewise, in *Dudley v. Superior Court* (1974) 36 Cal.App.3d 977 (*Dudley*), the magistrate held the defendant to answer for manslaughter but dismissed a murder count, saying, that he " 'did not think this was murder' " and "[t]here is no evidence [of] . . .

either expressed or implied malice." (*Id.* at pp. 978–979, 980.) After the prosecutor filed an information in the superior court charging murder, the defendant's section 995 motion was denied by the superior court. (*Dudley,* at p. 979.)

The reviewing court observed: "In the case at bench, the magistrate's remarks leave considerable room for interpretation, as is often true of the impromptu statements of lawyers and judges. Some portions suggest that the magistrate believed that a stronger showing of causation was required for murder than for manslaughter, or that the offense would not be murder where the assailant was unaware of the victim's pre-existing condition. Another portion might be read as expressing the view that the evidence was insufficient as a matter of law to support a finding of malice." (*Dudley, supra,* 36 Cal.App.3d at p. 981.) The court concluded that "the magistrate drew inferences from the proven facts, which indicated to his mind that there was no malice, even though these same evidentiary facts would have supported a finding of malice in the mind of another reasonable person." (*Id.* at p. 982.) No showing was made that the magistrate disbelieved testimony presented by the prosecution. Because "[t]he unimpeached, credible evidence received at the preliminary examination supports an inference of malice and gives probable cause to try petitioner for murder, but the magistrate acted upon his personal opinion that the offense was no more than manslaughter. In so doing he committed [an] error of law . . . . [¶] The magistrate's determination . . . that the defendant acted without malice was not a 'factual finding' as that term was used in *Jones*." (*Dudley,* at p. 985.)

Our review of the record in this case leads us to conclude that, similar to the magistrates in *Farley* and *Dudley*, the magistrate here did not make a finding of fact. Contrary to Moore's suggestion, the magistrate did not resolve any conflicts in the evidence or indicate that he did not believe any evidence supporting the prosecution's case. He merely stated, "I don't see there was great bodily injury that can be supported." Accordingly, the People were entitled to challenge this conclusion by recharging the great bodily injury enhancements and we independently review the magistrate's legal conclusion.

8

B.    *Great Bodily Injury*

Assuming the magistrate made no findings of fact, the People argue:  "[T]here is sufficient evidence to support a finding of great bodily injury and it should be left to the jury to determine this ultimate question of fact."  Moore disagrees:  "Given the uncontradicted medical records repeatedly indicating that Yin's gunshot wounds were 'superficial,' that Yin experienced no pain at the hospital, and that he was discharged with only a recommendation for Tylenol or Advil if he experienced pain and for follow-up medical [care] 'as needed' . . . , there was no *substantial evidence* of great bodily injury."  (Italics added.)  Moore incorrectly states the applicable standard.

" 'In a 995 proceeding, the court merely reviews the evidence.  It does not substitute its judgment as to the weight thereof or the credibility of the witnesses who testified at the hearing nor does it resolve conflicting factual contentions.  [Citations.] The function is similar to that of an appellate court reviewing the sufficiency of the evidence to sustain a judgment and involves the determination of a legal issue only.' [Citation.]"  (*People v. Superior Court* (*Cooper*) (2003) 114 Cal.App.4th 713, 717.)  "To prevail on a section 995 motion to set aside an information, the defendant must establish that he was 'committed without reasonable or probable cause.'  (§ 995, subd. (a)(2)(B).) To establish probable cause sufficient to withstand a section 995 motion to dismiss, the People must make some showing as to the existence of each element of the charged offense.  [Citation.]"  (*People v. Chapple* (2006) 138 Cal.App.4th 540, 545.)  "In determining if charges in an information can withstand a motion under section 995, neither the superior court nor the appellate court may reweigh the evidence or determine the credibility of the witnesses.  [Citations.]  Ordinarily, if there is some evidence in support of the information, the reviewing court will not inquire into its sufficiency. [Citations.]  Thus, an indictment or information should be set aside only when there is a total absence of evidence to support a necessary element of the offense charged. [Citations.]"  (*People v. Superior Court* (*Jurado*) (1992) 4 Cal.App.4th 1217, 1226.)

" 'On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of

9

evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated.' [Citation.]" (*People v. Hall* (1971) 3 Cal.3d 992, 996.) " '[A]lthough there must be some showing as to the existence of each element of the charged crime [citation] such a showing may be made by means of circumstantial evidence supportive of reasonable inferences on the part of the magistrate.' [Citation.] 'Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information.' [Citations.] Thus, the ultimate test is that ' " '[a]n information will not be set aside or [a] prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.' " ' (*People v. Slaughter*[*, supra,*] 35 Cal.3d [at p.] 637 . . . .) [¶] We review the evidence in support of the information to determine whether as a matter of law it is sufficient, not whether the trial court's ruling was reasonable. [Citations.]" (*Jurado, supra,* 4 Cal.App.4th at p. 1226, italics omitted.)

"Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." (§ 12022.7, subd. (a).) Section 12022.53, subdivision (d), provides that a term of 25 years to life is added to a sentence if the defendant inflicted great bodily injury by personally and intentionally discharging a firearm.[4] The parties agree that the question is the same for both the section 12022.53 and 12022.7 enhancement allegations, as well as the battery with serious bodily injury (§ 243, subd. (d)) charged in count six. (See *People v. Wade* (2012) 204 Cal.App.4th 1142, 1149 [" 'serious bodily injury,' as used in section

---

[4] "Notwithstanding any other provision of law, any person who, in the commission of a [specified] felony . . . , personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." (§ 12022.53, subd. (d).)

10

243, is ' "essentially equivalent" ' to ' "great bodily injury," ' as used, for example, in the section 12022.7 enhancement"]; *People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1375 ["[t]he terms 'serious bodily injury' and 'great bodily injury' have substantially the same meaning"].)  Accordingly, we consider a single issue.

" '[G]reat bodily injury' " is defined as " 'a significant or substantial physical injury' " (§ 12022.7, subd. (f)), which requires "substantial injury beyond that inherent in the offense," but not " 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function." (*People v. Escobar* (1992) 3 Cal.4th 740, 746, 750, italics omitted.)  It is an injury which is "not insignificant, trivial or moderate." (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748.)  Whether a particular injury constitutes great bodily injury is an issue of fact and reviewing courts accept the jury's finding even if the circumstances might reasonably be reconciled with a contrary finding. (*Escobar,* at p. 750.)  " ' "A fine line can divide an injury from being significant or substantial from an injury that does not meet the description." ' [Citations.]  Where to draw that line is for the jury to decide." (*People v. Cross* (2008) 45 Cal.4th 58, 64.)

Moore insists the evidence establishes trivial or moderate injuries only, but not physical injuries that are significant or substantial.  "Proof that a victim's bodily injury is 'great' . . . is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury. [Citations.]" (*People v. Cross, supra,* 45 Cal.4th at p. 66.)  Moore makes much of the relatively brief duration of Yin's treatment at SFGH, but an inference in favor of the information can be taken from the same evidence.  "Although *any* medical treatment obtained by the victim is relevant to determining the existence of 'great bodily injury' [citation]," no authority "*require[s]* a showing of necessity of medical treatment." (*People v. Wade, supra,* 204 Cal.App.4th at p. 1150, first italics added.)  The same can be said of the other factors Moore believes to be determinative.  In fact, "[a]n examination of California case law reveals that some physical pain or damage, such as lacerations, bruises, or abrasions is sufficient for a finding of 'great bodily injury.' [Citations.]"

11

(*People v. Washington* (2012) 210 Cal.App.4th 1042, 1047; accord, *People v. Jung* (1999) 71 Cal.App.4th 1036, 1042.)

Moore's and the trial court's reliance on *People v. Fuentes* (1946) 74 Cal.App.2d 737 (*Fuentes*) is misplaced. Fuentes struck the victim with his fist, the victim fell to the ground, with his head coming to rest on a railroad rail. The victim was briefly knocked unconscious and had a small laceration on the right side of his head. A doctor examined him two days later and described the cut as swollen, scabbed over, and "[b]etween an inch and an inch and a quarter" in length. (*Id.* at p. 739.) The doctor found no need for stitches, so treated the cut merely by cleaning it and applying antiseptic. (*Id.* at p. 740.) The defendant was convicted, after a bench trial, of committing an assault by means of force likely to produce great bodily injury (§ 245). On appeal, the defendant argued that substantial evidence did not support his conviction and that he was guilty of only battery (§ 242). (*Fuentes,* at p. 738.)

The court agreed with the defendant, observing as follows: "A blow to the jaw sufficient to knock out the recipient is not unusual in fistic encounters and such a result from one blow is not ordinarily considered a great bodily injury for it is usual for the victim to recover consciousness and the use of his normal faculties within a short time . . . . This leaves the wound on the head to be considered. Under the facts of this case the measure of the likelihood of great bodily injury is the result produced by the blow and fall, for the likelihood of great bodily injury from the blow is demonstrated by the injury actually inflicted. [¶] . . . The cut was not over one and one-quarter inches long and of an undetermined depth. It was not severe enough to require suturing. It seems unreasonable to describe it as a great bodily injury." (*Fuentes, supra,* 74 Cal.App.2d at pp. 741–742.)[5]

*Fuentes* involved only section 245, which " 'prohibits an assault by means of *force likely* to produce great bodily injury, not the use of force which does in fact produce such injury." (*People v. McDaniel, supra,* 159 Cal.App.4th at p. 748, first italics added.)

---

[5] *Fuentes* was disapproved on other grounds in *People v. Yeats* (1977) 66 Cal.App.3d 874, 879.

Here, in contrast, we are concerned only with the resulting injury and not the force applied. Furthermore, *Fuentes* has been the subject of repeated criticism. (See, e.g., *People v. Rupert* (1971) 20 Cal.App.3d 961, 967; *People v. Wells* (1971) 14 Cal.App.3d 348, 358; *People v. Muir* (1966) 244 Cal.App.2d 598, 603–604.)

Even if *Fuentes* is considered on point, Yin's injuries were more severe than those suffered by the victim in that case. Yin did not suffer a single cut of no more than one and a quarter inches. Rather, he suffered two gunshot wounds, one of which was a graze wound measuring between five and 10 centimeters. Most importantly, Yin also suffered a "through-and-through" gunshot wound, resulting in two holes measuring between one to two centimeters, which are clearly visible in the photographs admitted. Yin told Padilla that he felt pain as soon as he was shot. He was treated on the scene by paramedics and rushed to a hospital by ambulance, where he received medical treatment. Even if Yin left the hospital within a matter of hours, we cannot say there was no rational ground for assuming the possibility that Moore caused great bodily injury.

California courts have affirmed trial findings of great bodily injury on similar facts. In *People v. Wolcott* (1983) 34 Cal.3d 92, our Supreme Court upheld a great bodily injury finding when a bullet struck the victim's leg and bullet fragments also lodged in his arms and legs. (*Id.* at pp. 97, 107.) The treating doctor removed one fragment, but left others "to work their way out naturally." (*Id.* at p. 107.) The victim lost little blood, required no sutures, and was able to go to work the next day. The *Wolcott* court concluded the victim's "penetrating wounds" could not be "described as 'superficial' " and that the jury's finding was supported by substantial evidence. (*Id.* at pp. 107–108; see also *People v. Le* (2006) 137 Cal.App.4th 54, 59 ["defendant cites no authority holding that 'mere soft tissue injury' cannot be 'significant or substantial' within the meaning of section 12022.7(f), and we see no reason to accept that proposition without authority"]; *People v. Mendias* (1993) 17 Cal.App.4th 195, 201, 205–206 [bullet wound required hospital treatment and caused immediate pain, but bullet was not removed, did not cause long-term pain, and victim was discharged the next day]; *People v. Lopez* (1986) 176 Cal.App.3d 460, 462–465 & fn. 5 [one victim suffered penetrating gunshot

13

wound near buttock and another suffered penetrating gunshot wound through thigh, but no evidence either victim sought or received medical treatment]; *People v. Jaramillo* (1979) 98 Cal.App.3d 830, 834–837 [child whose mother hit her with a stick, suffered swelling, bruises, multiple contusions, and pain the next day].)

Unlike the reviewing courts in the above-cited cases, "we are not reviewing the sufficiency of evidence to support a jury verdict. Rather, we are only deciding if there is *some* evidence to support the alleged special circumstance allegation." (*Jurado, supra*, 4 Cal.App.4th at p. 1227, italics added.) The preliminary hearing evidence presented at least a rational ground for the disputed charges. The trial court therefore erred in setting aside the great bodily injury enhancements and count six.

### III.    DISPOSITION

The order granting Moore's motion to set aside the information is reversed. The matter is remanded to the trial court for entry of an order denying the motion to set aside the information and for further proceedings.

_____
BRUINIERS, J.


WE CONCUR:


_____
SIMONS, Acting P. J.


_____
NEEDHAM, J.


15