Filed 9/15/23

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ESTEBAN MARTIN AGUILAR-JIMENEZ,<br><br>    Defendant and Respondent. | H050153<br>(Santa Clara County<br> Super. Ct. No. C2200332) |


The "two-dismissal rule" of Penal Code section 1387[1] "bar[s] further prosecution of a felony if the action against the defendant has been twice previously terminated according to the provisions of that statute." (*Berardi v. Superior Court* (2008) 160 Cal.App.4th 210, 218.) "Section 1387 implements a series of related public policies. It curtails prosecutorial harassment by placing limits on the number of times charges may be refiled. [Citations.] The statute also reduces the possibility that prosecutors might use the power to dismiss and refile to forum shop. [Citations.] Finally, the statute prevents the evasion of speedy trial rights through the repeated dismissal and refiling of the same charges. [Citations.]" (*Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1018.) The bar to prosecution after two dismissals is, however, subject to exceptions. At issue here: "[i]f a previous termination was made under Section . . . 871[] or 995, a subsequent order

---

[1] Unspecified statutory references are to the Penal Code.

terminating an action is not a bar to prosecution if: [¶] . . . [¶] (3) The motion pursuant to Section 995 was granted after dismissal by the magistrate of the action pursuant to Section 871 and was recharged pursuant to Section 739." (§ 1387, subd. (c).) In short, not every dismissal is a termination for the purposes of section 1387.

The parties here dispute whether the superior court's dismissal under section 995 of two counts of murder, recharged by information after the magistrate dismissed the counts under section 871 in the same action, is a bar to further prosecution for the same offenses. Because we consider section 739 to have permitted the recharging of the murder counts and reject defendant Esteban Martin Aguilar-Jimenez's narrow interpretation of section 1387, subdivision (c)(3), we discern only a single prior termination of the murder prosecutions. We therefore reverse the judgment of dismissal.

## I. BACKGROUND

### A. *The First Case (C1922671)*

In December 2019, the Santa Clara County District Attorney charged Aguilar-Jimenez by felony complaint in case number C1922671 with two counts of murder (§ 187, subd. (a); counts 1 and 2), driving under the influence of alcohol and causing injury to another (Veh. Code, § 23153, subd. (a); count 3), and driving under the influence of alcohol with a blood-alcohol level of 0.08% or more and causing injury (Veh. Code, § 23153, subd. (b); count 4). It was alleged as to counts 3 and 4 that Aguilar-Jimenez personally inflicted great bodily injury within the meaning of sections 12022.7, subdivision (a) and 1203, subdivision (e)(3) as to multiple victims.

The evidence presented at the preliminary hearing reflected that during the early morning hours of December 1, 2019, Aguilar-Jimenez drove his car while his blood-alcohol level exceeded 0.188 percent. Reaching speeds between 146 and 158 miles per hour, Aguilar-Jimenez ultimately crashed into another vehicle, killing two of its

occupants and inflicting great bodily injury on a third. Aguilar-Jimenez's three passengers were also injured in the crash.

The magistrate (the Honorable Robert Hawk) held Aguilar-Jimenez to answer on counts 3 and 4 but declined to hold Aguilar-Jimenez on the two murder counts due to a lack of probable cause under section 871. In articulating the reasons for its limited holding order, the magistrate stated that the evidence presented at the preliminary hearing "compel[led] the factual conclusion that defendant Aguilar-Jimenez did not have the requisite state of mind for implied malice" murder.[2]

In particular, the magistrate found "significant" that Aguilar-Jimenez had "folks that . . . considered themselves to be his friends in the car with him," which "cut[] against any inference that he actually consciously understood that his conduct posed a substantial risk of killing others, killing his friends, killing himself, but that he just disregarded that." The magistrate further noted that there was "no evidence of any prior DUI's" and "no inference to be made supporting implied malice based on *Watson* advisement or prior history with DUI's." Moreover, the magistrate found that Aguilar-Jimenez's young age "cut[] against [an] inference that he would have the experience and the judgment of an older individual in his same position." Although there was evidence that Aguilar-Jimenez was speeding and making an unsafe lane change at the time of the crash, the magistrate found that this evidence did not "support[] an inference of knowing disregard for human life." The magistrate also noted that there was no evidence or prior accidents

---

[2] "Under certain circumstances, malice may be implied when a defendant kills someone while willfully driving under the influence of alcohol, thus subjecting the defendant to a charge of murder." (*People v. Munoz* (2019) 31 Cal.App.5th 143, 152 (*Munoz*).) "This is 'colloquially known as a *Watson* murder' after [*People v. Watson* (1981) 30 Cal.3d 290]. [Citation.] Among other things, conviction on this basis requires a showing that the defendant had a subjective, actual awareness of the risk presented by his or her conduct. [Citation.]" (*Ibid.*)

3

or near accidents that night, nor was there evidence that Aguilar-Jimenez tried to flee from the police.

Approximately two weeks later, the district attorney filed an information recharging the same two murder counts (counts 1 and 2) and the two related DUI counts (counts 3 and 4).

In the superior court, Aguilar-Jimenez moved to dismiss the murder counts under section 995, arguing that the magistrate's determination of no probable cause reflected factual findings that were supported by the evidence. In opposition, the prosecutor argued that recharging the murder counts was proper under section 739, in that the magistrate had not made factual findings but reached legal conclusions to which the superior court owed no deference.

The superior court (the Honorable Philip Pennypacker) granted Aguilar-Jimenez's section 995 motion. Although the superior court considered the magistrate to have made factual findings when declining to hold Aguilar-Jimenez to answer on the two murder counts, the court also concluded that the evidence was insufficient to support a finding of implied malice.

Several months later, in January 2022, the superior court granted the prosecutor's request to dismiss the remaining counts of the information.

**B.** *The Second Case (C2200332)*

The same day that case number C1922671 was dismissed, the district attorney filed a felony complaint in case number C2200332. The complaint charged Aguilar-Jimenez with two counts of murder (§ 187, subd. (a); counts 1 and 2), two counts of gross vehicular manslaughter (§ 191.5, subd. (a); counts 3 and 4), driving under the influence of alcohol and causing injury to another (Veh. Code, § 23153, subd. (a); count 5), and driving under the influence of alcohol with a blood-alcohol level of 0.08% or more and causing injury (Veh. Code, § 23153, subd. (b); count 6). As to counts 5 and 6, it was

4

alleged that Aguilar-Jimenez personally inflicted great bodily injury within the meaning of sections 12022.7, subdivision (a) and 1203, subdivision (e)(3) as to multiple victims.

Aguilar-Jimenez moved to dismiss the two murder counts (counts 1 and 2) under section 1387, arguing that there had already been two terminations of the murder counts. The magistrate (the Honorable Nona Klippen) initially denied the motion, determining that the two dismissals in case number C1922671 constituted "one action," which had not been terminated until the superior court granted the section 995 motion. After a new preliminary hearing and before independently evaluating the sufficiency of the evidence, however, the magistrate reconsidered her denial of the motion to dismiss in light of *Jones v. Superior Court* (1971) 4 Cal.3d 660 (*Jones*). After further briefing by the parties, the magistrate concluded that the exceptions to the two-dismissal rule articulated under section 1387, subdivisions (a)(1) and (c)(3) were inapplicable. Noting that section 739 permitted the district attorney to recharge counts dismissed pursuant to section 871 only "when the charges were dismissed by [a] magistrate as a matter of law," she reasoned that the previous magistrate had dismissed the murder counts "as a matter of fact." Further concluding that the district attorney had not shown excusable neglect under section 1387.1, the magistrate accordingly vacated her earlier denial of the motion to dismiss the two murder counts and entered a new order granting the motion.

Aguilar-Jimenez thereafter entered an open plea of no contest to the remaining charges, duly advised of the district attorney's intention to appeal the magistrate's dismissal of the murder counts. This timely appeal followed.

## II. DISCUSSION

The dismissal order under appeal turns on the proper interpretation of section 1387 and our determination as to whether the first magistrate made conclusive factual findings foreclosing the district attorney's reliance on section 1387, subdivision (c)(3)'s exception to the two-dismissal rule. Our review of both issues is de novo. (*California State*

5

*University, Fresno Assn., Inc. v. County of Fresno* (2017) 9 Cal.App.5th 250, 265 [questions of statutory interpretation are reviewed de novo]; *People v. Abelino* (2021) 62 Cal.App.5th 563, 578 [magistrate's legal determination is reviewed de novo].)  As we explain, we consider the undisputed procedural history of the murder prosecution to fall squarely within the exception of section 1387, subdivision (c)(3).  The first magistrate's dismissal of the charges under section 871 was not a termination of the action, given the lawful recharging of the counts in the information under section 739; the superior court's dismissal of the recharged murder counts under section 995 therefore constituted only the first termination of the murder prosecutions.

A.      ***The Propriety of the Recharging of the Murder Counts Under Section 739***

To begin, Aguilar-Jimenez concedes that "[s]ection 739 permitted the prosecutor here to file the murder charges in the information in Case No. C1922671."  His concession is well taken.[3]

Following a preliminary examination of the evidence, if it "appears . . . that no public offense has been committed or that there is not sufficient cause to believe the defendant guilty of a public offense, the magistrate shall order the complaint dismissed and the defendant to be discharged . . . ."  (§ 871.)  If, however, the magistrate holds the defendant to answer a charged offense, the prosecutor under section 739 has "the duty . . . to file in the superior court . . . within 15 days after the commitment, an information against the defendant which may charge the defendant with either the offense or offenses

---

[3] The district attorney argues that subdivision (c)(3) of section 1387 does not require the murder counts to have been *properly* included under section 739 in the since-dismissed information, on the theory that the exception applies even if the murder counts could not have been validly included in the information under section 739.  We need not reach this alternative argument, given our acceptance of Aguilar-Jimenez's concession.

named in the order of commitment *or any offense or offenses shown by the evidence taken before the magistrate* to have been committed." (Italics added.)

" '[U]nder Penal Code section 739 the district attorney is not bound by the view of the committing magistrate; he is free to file an information charging the highest offense which any reasonable construction of the evidence adduced at the preliminary hearing admits [citation].' " (*People v. Barba* (2012) 211 Cal.App.4th 214, 227.) Section 739 thus permits the prosecutor to refile charges even if the magistrate has made a "legal conclusion on the insufficiency of the evidence of an offense not named in the complaint." (*People v. Brice* (1982) 130 Cal.App.3d 201, 210 (*Brice*).) But the prosecutor's ability to recharge counts under section 739 is not unlimited: "[A] literal construction of section 739 would bring it into conflict with the constitutional mandate which 'protects a person from prosecution in the absence of a prior determination by either a magistrate or a grand jury that such action is justified.' [Citations.]" (*Jones, supra,* 4 Cal.3d at p. 664.)

"Accordingly, the rule has developed that an information which charges the commission of an offense not named in the commitment order will not be upheld unless (1) the evidence before the magistrate shows that such offense was committed (Pen. Code, § 739), and (2) that the offense 'arose out of the transaction which was the basis for the commitment' on a related offense." (*Jones, supra,* 4 Cal.3d at pp. 664-665.) Moreover, "[t]he district attorney is precluded from [recharging dismissed counts] . . . where factual findings made by the magistrate are fatal to the allegation that the offense was committed." (*Brice, supra,* 130 Cal.App.3d at p. 210.)

"A clear example of [a fatal factual finding] would be when the magistrate expresses disbelief of a witness whose testimony is essential to the establishment of some element of the corpus delicti." (*Pizano v. Superior Court* (1978) 21 Cal.3d 128, 133 (*Pizano*); *People v. Superior Court (Day)* (1985) 174 Cal.App.3d 1008, 1015 (*Day*)

7

[magistrate makes fatal factual finding by determining "as a matter of fact there is no possible evidentiary support for the charge"].) Similarly, a prosecutor has been barred from recharging sexual assault offenses where "the magistrate found, as a matter of fact, that [the victim] consented to intercourse and that no acts of oral copulation or sodomy occurred . . . ." (*Jones*, *supra*, 4 Cal.3d at p. 666.)

"When, however, the magistrate either expressly or impliedly accepts the evidence and simply reaches the ultimate *legal conclusion* that it does not provide probable cause to believe that the offense was committed, such conclusion is open to challenge by adding the offense to the information. Addition of the offense is, of course, subject to attack in the superior court under Penal Code section 995, to review by pretrial writ, and finally, to appellate review from the judgment of conviction." (*Pizano*, *supra*, 21 Cal.3d at p. 133.) For example, in *Pizano*, the California Supreme Court determined that the magistrate's "explanation of his refusal to hold petitioner" for murder (where the petitioner used the victim as a shield to effect his escape) "clearly reveal[ed] that his determination that implied malice was not shown was a *legal conclusion*, not a finding of fact as that term is used in *Jones*." (*Pizano*, *supra*, 21 Cal.3d at pp. 133-134, italics added; see also *Zemek v. Superior Court* (2020) 44 Cal.App.5th 535, 543, 547 (*Zemek*) [magistrate's conclusion that evidence supported implied malice but not express malice was a legal conclusion].)

At its core, a magistrate's decision whether the evidence is sufficient to hold a defendant to answer a particular charge is fundamentally a mixed question of fact and law. In cases where the decision turns on disputed facts, the magistrate's resolution of those factual disputes may preclude refiling under section 739. But in cases where the bare facts are undisputed—and the decision turns on the inferences to be drawn from those facts and on their legal sufficiency—the issue is purely one of law, independently reviewable by the superior court under section 995.

8

Here, the first magistrate framed his careful assessment of the evidence before the court as a factual finding, but "the magistrate's role is limited by statute to determining whether or not there is 'sufficient cause' to believe the defendant guilty of a public offense." (*People v. Uhlemann* (1973) 9 Cal.3d 662, 667.) Of course, the magistrate "is entitled to perform adjudicatory functions" in examining the sufficiency of cause and accordingly "may weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses. [Citation.]" (*Ibid.*) This was not, however, a preliminary hearing in which the magistrate found any prosecution witness to be incredible or resolved any factual conflict between competing witness accounts, as in *Jones*. (See *Jones*, *supra*, 4 Cal.3d at p. 667 [magistrate "with[held] credence to the testimony of [the victim]"].) Rather, considering the evidence in light of the factors present in *Watson*,[4] the magistrate reasoned: (1) that Aguilar-Jimenez had friends in the car when he drove, (2) that there was no evidence of prior DUIs or prior *Watson* advisements that would suggest implied malice, (3) Aguilar-Jimenez's young age cut against an inference that he had the insight of someone more mature, (4) Aguilar-Jimenez's high rate of speed and his unsafe lane change did not support an inference of knowing disregard for human life, (5) that Aguilar-Jimenez had no prior accidents or near misses that night, and (6) that there was no evidence Aguilar-Jimenez tried to flee from the police.

Accordingly, given the limited purpose of a preliminary hearing and the limited scope of the evidence presented at this particular preliminary hearing, the first

---

[4] Generally, "[o]pinions affirming convictions [of *Watson* murders] have relied on a number of factors present in *Watson*, including ' "(1) blood-alcohol level above the .08 legal percent legal limit; (2) a predrinking intent to drive; (3) knowledge of the hazards of driving while intoxicated; and (4) highly dangerous driving." ' " (*Munoz*, *supra*, 31 Cal.App.5th at p. 152.) But the presence or absence of one or more of these factors is not dispositive: " 'Rather, [*Watson*] states that the presence of those factors was sufficient *in that case* . . . .' " (*People v. Wolfe* (2018) 20 Cal.App.5th 673, 683.)

9

magistrate's "factual conclusion that . . . Aguilar-Jimenez did not have the requisite state of mind" under *Watson, supra*, 30 Cal.3d 290, was in fact a *legal* conclusion as to the sufficiency of otherwise undisputed facts and evidence presented at the preliminary hearing. (See *Pizano, supra*, 21 Cal.3d at p. 133; see also *Day, supra*, 174 Cal.App.3d at p. 1015; *Zemek, supra*, 44 Cal.App.5th at p. 547; *Dudley v. Superior Court* (1974) 36 Cal.App.3d 977, 985 [magistrate's conclusion that the defendant acted without malice was not a factual finding as in *Jones*].)

As the magistrate did not make factual findings that were "fatal to the allegation that the offense was committed," the prosecutor was authorized to recharge the murder counts with the related DUI offenses under section 739. (*Brice, supra*, 130 Cal.App.3d at p. 210.)

**B.** *The Two-Dismissal Rule and Section 1387, subdivision (c)(3)*

Having determined that the first magistrate's dismissal of the murder charges did not divest the district attorney of the discretion to recharge them in the information under section 739, we turn to whether the antecedent dismissal under section 871 and the subsequent dismissal under section 995 constitute one or two terminations for purposes of section 1387.

Beginning with the plain language of the statute, "we construe the words in question in context, keeping in mind the statutes' nature and obvious purposes. [Citation.] We must harmonize the various parts of the enactments by considering them in the context of the statutory framework as a whole." (*People v. Cole* (2006) 38 Cal.4th 964, 975 (*Cole*).) Although section 1387 generally bars further prosecution if there have been two terminations, the Legislature has prescribed exceptions to this general rule. As is pertinent here, "[i]f a previous termination was made under section . . . 871, or 995, the subsequent order terminating an action is not a bar to prosecution if: [¶] . . . [¶] (3) The motion pursuant to Section 995 was granted after dismissal by the magistrate of the

10

action pursuant to Section 871 and was recharged pursuant to Section 739." (§ 1387, subd. (c).) Differently put, when the superior court grants a defendant's section 995 motion to dismiss counts recharged under section 739 despite a magistrate's previous dismissal of the charges under section 871, subdivision (c)(3) of section 1387 treats the magistrate's dismissal and the superior court's dismissal as a single termination. The superior court's later review of the magistrate's findings under section 995 is not a separate proceeding: both the magistrate's dismissal under section 871 and the superior court's subsequent dismissal under section 995 were successive examinations of the *same* preliminary hearing in the same action: " '[I]n proceedings under section 995 it is the magistrate who is the finder of fact; the superior court has none of the foregoing powers, and sits merely as a reviewing court . . . .' " (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141 (*Gonzalez*).) Thus, when the prosecutor refiled the charges in case number C1922671, the prosecutor commenced a *second* prosecution—not a third—and had not yet run afoul of section 1387's two-dismissal rule.

Our reading of the statutory language is consistent with *People v. Superior Court (Martinez)* (1993) 19 Cal.App.4th 738 (*Martinez*), in which the Second District Court of Appeal held that "a magistrate's (first) dismissal under section 871 is not by itself a termination of the action when followed by the filing of an information under section 739." (*Id.* at p. 746.) In *Martinez*, following a preliminary hearing on a complaint charging defendants Martinez and Lopez with murder and conspiracy to commit insurance fraud, the magistrate declined to hold the defendants to answer for murder. (*Id.* at p. 742.) The prosecutor then filed an information under section 739, charging Martinez and Lopez with not only conspiracy to commit insurance fraud but also murder. (*Martinez*, *supra*, at p. 742.) Meanwhile, the grand jury returned an indictment charging 30 defendants in connection with a broader insurance fraud conspiracy, and the charges as to Martinez and Lopez included the original murder and

11

insurance fraud. (*Id.* at p. 743.) After the indictment was unsealed, the information was dismissed under section 1385; the superior court later agreed with defendants that, under section 1387, this dismissal of the information was "a second termination" of the murder charge that barred further prosecution. (*Martinez*, *supra*, at p. 743.)

On the prosecutor's petition for writ of mandate, the Second District observed that while a magistrate's decision under section 871 not to hold a defendant to answer was a dismissal, not every such dismissal was a "termination" under section 1387: "Whether the magistrate's order of dismissal under section 871 is an order terminating the action within the meaning of section 1387 depends on the circumstances[,]" including the prosecutor's election not to abide by the magistrate's evaluation of the evidence. (*Martinez*, *supra*, 19 Cal.App.4th at p. 744.) Had the prosecutor chosen to treat the magistrate's dismissal "as a final termination of that (first) action, and start over with a new (second action)"—by filing a new complaint and submitting to a second preliminary hearing—"the magistrate's order of dismissal of the complaint under section 871 [would have] terminate[d] the (first) action." (*Id.* at p. 745.) But where the prosecutor elects under section 739 to stand on the record of the original preliminary hearing and file an information charging the defendant with offenses beyond those named in the holding order, "whether the magistrate was wrong in evaluating the sufficiency of the evidence at the preliminary hearing" is a legal issue to be "tested in superior court by the defendant's motion under section 995 to set aside the information." (*Martinez*, *supra*, at p. 745.) In such cases, "the magistrate's dismissal under section 871 at the preliminary hearing does not terminate the action. The action continues with an information filed under the same case number pursuant to section 739. The action is not terminated at all if the superior court disagrees with the magistrate and denies a section 995 motion based on the evidence at the preliminary hearing. . . . In any event, the action remains alive at least

12

*until* the superior court agrees with the magistrate's ruling and grants the defendant's section 995 motion." (*Ibid.*)

Applying this rationale, the *Martinez* court found that the dismissal of the information—notwithstanding the magistrate's earlier dismissal under section 871—was merely a *first* termination within the meaning of section 1387. (*Martinez*, *supra*, 19 Cal.App.4th at p. 746.) The indictment was therefore a second prosecution and was thus not barred by section 1387. (*Martinez*, *supra*, at p. 746.)

Aguilar-Jimenez argues that we should not follow *Martinez*, as *Martinez* did not resolve whether a section 871 dismissal after a preliminary hearing, followed by a recharging of the counts in an information under section 739 and a dismissal under section 995, counts as one termination or two. Aguilar-Jimenez maintains that any guidance from *Martinez* on this point is dicta because the proceedings there, as *Martinez* itself noted, "did not get that far": the indictment prompted dismissal of the information without a section 995 motion. (*Martinez*, *supra*, 19 Cal.App.4th at pp. 745-746.) Although Aguilar-Jimenez is correct that *Martinez* did not resolve the issue specifically presented in this case, its pure statement of law—that a dismissal under section 871 does not constitute a first termination under section 1387 of counts recharged under section 739—was essential to the resolution of the case and is not dictum. (*People v. Valencia* (2011) 201 Cal.App.4th 922, 929.)

In arguing that the section 995 dismissal and the antecedent section 871 dismissal on the same preliminary hearing record should count as two terminations, Aguilar-Jimenez relies on *Ramos v. Superior Court* (1983) 32 Cal.3d 26 (*Ramos*) and *Dunn v. Superior Court* (1984) 159 Cal.App.3d 1110 (*Dunn*). Both decisions, however, addressed iterations of section 1387 that pre-dated its amendment in 1984, which added

13

the language now found in subdivision (c)(3).[5] Both decisions are moreover procedurally distinguishable, in that the dismissals constituting the requisite two terminations prior to the disputed refiling came after separate preliminary hearings in each of two independently filed actions. (*Dunn, supra*, at pp. 1113-1114 [where the prosecution dismissed an information the morning of trial, a magistrate's section 871 dismissal of a refiled complaint after a new preliminary hearing was a second termination barring the prosecution's filing of a section 739 information with the same charges]; *Ramos, supra*, at p. 29 [where there were two complaints, two preliminary hearings, and two dismissals under section 871 of the special circumstances allegation for insufficiency of the evidence, section 739 information recharging the allegation was barred].)

This procedural circumstance—where each dismissal following a separate evidentiary presentation counted as a termination—presents a critical distinction that Aguilar-Jimenez does not address in endeavoring to analogize his case to *Ramos, Dunn*, and other cases decided under section 1387 as amended in 1984. As summarized by another court, *Ramos* stands for the proposition that "two section 871 dismissals by a

---

[5] As noted in *Martinez*, the year after *Ramos* was decided, the Legislature amended section 1387 to add the language now found in subdivision (c)(3)—that "if the previous termination was pursuant to Section . . . 995, the subsequent order terminating an action is not a bar to prosecution if: [¶] . . . [¶] . . . The motion pursuant to Section 995 was granted after dismissal by the magistrate of the action pursuant to Section 871 and was recharged pursuant to Section 739" (Stats. 1984, ch. 924, § 1, pp. 3090-3091)— thus suggesting that "the Legislature also considered a magistrate's first section 871 dismissal, followed by refiling under section 739 and the grant of a section 995 dismissal, to constitute parts of a single prosecution, resulting in a termination of an action, not two." (*Martinez, supra*, 19 Cal.App.4th at p. 746.)

14

magistrate bars prosecution under section 1387." (*People v. Carreon* (1997) 59 Cal.App.4th 804, 807 (*Carreon*).)[6]

Aguilar-Jimenez argues that *Carreon*, *supra*, 59 Cal.App.4th 804 is a "close but not . . . exact match to the instant case" in that it too involved a dismissal under section 871 and another under section 995—only in the reverse order, a detail Aguilar-Jimenez posits is insignificant. In *Carreon*, the grand jury returned an indictment charging the defendant with multiple counts, including assault with a deadly weapon and a gang enhancement, but the superior court granted the defendant's section 995 motion as to that count and the gang enhancement and then granted the prosecutor's later motion to dismiss the indictment as a whole. (*Carreon*, *supra*, at p. 806.) After the prosecutor filed a new complaint alleging the same assault and gang enhancement, the magistrate at the preliminary hearing held the defendant to answer on the substantive assault but did not hold him to answer on the gang enhancement, which was dismissed pursuant to section 871. (*Carreon*, *supra*, at p. 806.) The prosecutor then filed an information charging the defendant with both the assault and the gang enhancement. (*Ibid.*) On appeal, the Second District determined that the case before it was more akin to *Ramos* than to *Martinez* and concluded that section 1387 barred the prosecution of the gang enhancement. (*Carreon*, *supra*, at p. 810.)

From this, Aguilar-Jimenez argues that any combination of dismissals under section 995 and section 871 constitute two terminations, on the ground that there is no

---

[6] Even under the pre-1984 version of section 1387, the California Supreme Court in *Ramos* expressly declined to reach the issue presented here: "We note that this case does not present the question of the applicability of section 1387 to a case in which (1) a magistrate dismisses a charge one time under section 871, (2) the prosecutor files an information recharging the dismissed matter under section 739, and (3) the superior court dismisses the refiled charges under section 995. Accordingly, we express no view on that issue." (*Ramos*, *supra*, 32 Cal.3d at p. 37, fn. 12.)

15

reason to think that the *order* of the dismissals has any significance under section 1387. But the plain language of section 1387, subdivision (c)(3) defeats his logic, specifically providing that if a "previous termination was pursuant to Section . . . 871, or 995, the *subsequent* order terminating an action is not a bar to prosecution if: [¶] . . . [¶] (3) The motion pursuant to Section 995 was granted *after* dismissal by the magistrate of the action pursuant to Section 871 and was recharged pursuant to Section 739." (Italics added.) It is not the temporal relationship between a magistrate's section 871 dismissal and a superior court's section 995 dismissal that matters but the functional relationship between the two, linked as they are by the filing of the information under section 739 and the superior court's authority to review as support for that information the adequacy of the same evidence the magistrate had found wanting at the preliminary hearing. When an information is filed under section 739 and subject to a motion to dismiss under section 995, the superior court deciding the motion is reviewing the magistrate's determination of legal insufficiency. (See *Gonzalez*, *supra*, 2 Cal.5th at p. 1141.) A magistrate, of course, never has comparable occasion to review the superior court's section 995 determination. Accordingly, *Carreon* did not discuss section 1387, subdivision (c)(3), nor the exception contained within. It had no need to, because each of the two dismissals of the gang enhancement followed a separate evidentiary presentation—one before a grand jury, the other before a magistrate. (*Carreon*, *supra*, 59 Cal.App.4th at p. 806.)[7]

 *Bodner v. Superior Court* (1996) 42 Cal.App.4th 1801, on which Aguilar-Jimenez also relies, is similarly distinguishable. Although *Bodner*, like *Carreon*, post-dated the

---

[7] *Carreon*'s holding that section 1387 barred recharging the gang enhancement under section 739 after the *second* such evidentiary proceeding is an issue beyond the scope of this case in its current posture. Here, the second magistrate decided to dismiss the murder charges under section 1387 after concluding the first (and only) section 871 dismissal and the subsequent 995 dismissal constituted two terminations. At the time, she had made no decision as to whether there was probable cause to hold Aguilar-Jimenez to answer on the dismissed charges.

16

1984 amendments to section 1387, the refiling in dispute followed two separate preliminary hearings in two separate actions, just as in *Ramos* and *Dunn*. (*Bodner*, *supra*, at pp. 1803-1805.) In *Bodner*, the prosecutor elected to recharge the attempted murder counts under section 739 following a dismissal after a preliminary hearing under section 871. (*Id.* at p. 1803.) The attempted murder counts were then dismissed under section 995. (*Ibid.*) The prosecutor thereafter dismissed the entire complaint and filed a new complaint, again alleging the same counts of attempted murder, which were dismissed following a second preliminary hearing under section 871. (*Ibid.*) *Bodner* thus concluded that the attempted murder charges had been twice terminated under section 1387, as in *Ramos*. (*Bodner*, *supra*, at p. 1806.)

Next, Aguilar-Jimenez argues that "the clear language" of subdivision (c)(3) of section 1387 renders the exception inapplicable because the exception applies only where a complaint was dismissed before a preliminary hearing in favor of an indictment. Aguilar-Jimenez bases his argument on the Legislature's division of subdivision (c) into two distinct halves, the first of which provides: "An order terminating an action is not a bar to prosecution if a complaint is dismissed before the commencement of a preliminary hearing in favor of an indictment filed pursuant to Section 944 and the indictment is based upon the same subject matter as charged in the dismissed complaint, information, or indictment." The second half of section 1387, subdivision (c), however, continues with the language at issue here: "However, if the previous termination was pursuant to Section 859b, 861, 871, or 995, the subsequent order terminating an action is not a bar to prosecution if: [¶] . . . . [¶] (3) The motion pursuant to Section 995 was granted after dismissal by the magistrate of the action pursuant to Section 871 and was recharged pursuant to Section 739."

We reject Aguilar-Jimenez's narrow reading of section 1387, subdivision (c). " 'The meaning of a statute may not be determined from a single word or sentence; the

17

words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.' " (*People v. Shabazz* (2006) 38 Cal.4th 55, 67 (*Shabazz*); *Cole*, *supra*, 38 Cal.4th a p. 975.) In harmonizing the provisions, we avoid absurd results the Legislature could not have intended. (*Shabazz*, *supra*, at p. 68.) The first paragraph of section 1387, subdivision (c) *already* carves out an exception to the two-dismissal rule, one that applies where one of the asserted two dismissals is the dismissal of a complaint before a preliminary hearing in favor of an indictment. It would make little sense for the second half of subdivision (c), which sets forth additional exceptions, to apply only in situations where application of the first exception makes resort to additional exceptions unnecessary. We read the relevant language of subdivision (c) as the equivalent of "[a]n order terminating an action is not a bar to prosecution if the previous termination was pursuant to Section . . . 871[] or 995" and any of the numbered conditions, such as subdivision (c)(3), applies.

Moreover, even if we were to find the language of the statute to "support[] more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*Cole*, *supra*, 38 Cal.4th at 975.) "Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (*People v. Sinohui* (2002) 28 Cal.4th 205, 211 (*Sinohui*).) The legislative history of section 1387 supports our interpretation.[8]

---

[8] On our own motion, we take judicial notice of the following legislative history: (1) Assembly Bill No. 3810 (1983-1984 Reg. Sess.), (2) bill analyses of Assembly Bill No. 3810 prepared by the Assembly Committee on Criminal Law and Public Safety and the Senate Committee on the Judiciary, (3) Senate Bill No. 19 (1991 Reg. Sess.), (4) bill analysis of Senate Bill No. 19 by the Senate Rules Committee, (5) Senate Bill No. 1827

18

As initially enacted, the exceptions set forth in section 1387 were *not* divided into lettered subdivisions, and the first and second paragraphs of now subdivision (c)(3) were simply stand-alone paragraphs contained within the same statute. (Stats. 1984, ch. 924, § 1 (Assem. Bill No. 3810).)[9]

The bill analyses prepared by the Assembly Committee on Criminal Law and Public Safety and the Senate Committee on the Judiciary both reflect that the 1984 amendments to section 1387 were meant to address the following concern: "Current law provides that if a complaint alleges several related crimes and the magistrate determines that there is sufficient evidence supporting some of the charges but not others, the prosecution can nonetheless file any information which includes all of the charges to test the magistrate's finding. If the superior court agrees with the magistrate's finding, the

---

(1993-1994 Reg. Sess.), (6) bill analysis of Senate Bill No. 1827 by the Senate Judiciary Committee.

[9] The 1984 version of section 1387 read in pertinent part:

"An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony or it is a misdemeanor charged together with a felony and the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995 . . . .

"An order terminating an action is not a bar to prosecution if a complaint is dismissed before the commencement of a preliminary hearing in favor of an indictment filed pursuant to Section 944 and the indictment is based upon the same subject matter as charged in the dismissed complaint, information, or indictment.

"However, if the previous termination was pursuant to Section 859b, 861, 871, or 995, the subsequent order terminating an action is not a bar to prosecution if:

"[¶] . . . [¶]

"(c) The motion pursuant to Section 995 was granted after dismissal by the magistrate of the action pursuant to Section 871 and was recharged pursuant to Section 739." (Stats. 1984, ch. 924, § 1, pp. 3090-3091.)

19

additional charges will be set aside on a [9]95 motion.  According to the [bill] sponsor, at least one court has held that such a scenario would result in two dismissals, even though there had only been a single prosecution.  The sponsor contends that the law should be clarified so that the various actions in the course of the same proceeding together count only as a single dismissal." (Assem. Com. on Crim. Law and Public Safety, Analysis of Assem. Bill No. 3810 (1983-1984 Reg. Sess.) as amended May 7, 1984, p. 3; see also Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3810 (1983-1984 Reg. Sess.) as amended June 7, 1984, p. 4.)

In sum, both the plain text of section 1387, as amended in 1984, as well as the analyses provided by the legislative committees, suggest that the language now found in subdivision (c)(3) was added to section 1387 to ensure that a dismissal following a section 995 motion is *not* bar to prosecution if the motion was granted after the counts were recharged in an information under section 739 after being previously dismissed under section 871.

That the provision subsequently went through a formatting change without a substantive change in its language does not alter its applicability to this case, nor does the statute's subsequent legislative history reflect any intent by the Legislature to limit the exception.  In 1991, section 1387 was amended and reformatted to add lettered paragraphs (a) and (b), with the two paragraphs now found in subdivision (c) grouped together into former subdivision (b).  (Stats. 1991, ch. 400, § 2.)  Nothing in the legislative history of the 1991 amendments reflect that by placing both paragraphs—the exception related to dismissing a complaint or information in lieu of an indictment before a preliminary hearing and the exceptions specified in now subdivision (c)(1) through (3)—together within the same lettered paragraph, the Legislature somehow intended to narrow the list of exceptions to the two-dismissal rule.  Rather, the 1991 amendments to the statute were, according to an analysis by the Senate Rules Committee, made to

20

"permit refiling of specified offenses, including misdemeanors, which were dismissed due to the failure of the victim to appear in court." (Sen. Rules Comm., Analysis of Sen. Bill 19 (1991 Reg. Sess.) as amended June 28, 1991, p. 2.)[10] Indeed, the 1991 amendment to section 1387 substantively added the language in subdivision (a)(3), which precludes the applicability of the two-dismissal rule if the prior dismissal was the result of a failure to appear by the complaining witness. (Stats. 1991, ch. 400, § 2.)

And likewise, nothing in the legislative history of the 1994 amendment to the statute, which relettered former subdivision (b) to its current position at subdivision (c), reflects that there was any intent to limit the exceptions to the two-dismissal rule. (Stats.

---

[10] Following the 1991 amendments, section 1387 was amended to read in pertinent part:

"(a) An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony or it is a misdemeanor charged together with a felony and the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995 . . . . except in those felony cases . . . where subsequent to the dismissal of the felony or misdemeanor the judge or magistrate finds any of the following:
"[¶] . . . [¶]
"(3) That the termination of the action was the result of the failure to appear by the complaining witness . . . .
"(b) An order terminating an action is not a bar to prosecution if a complaint is dismissed before the commencement of a preliminary hearing in favor of an indictment filed pursuant to Section 944 and the indictment is based upon the same subject matter as charged in the dismissed complaint, information, or indictment.
"However, if the previous termination was pursuant to Section 859b, 861, 871, or 995, the subsequent order terminating an action is not a bar to prosecution if:
"[¶] . . . [¶]
"(3) The motion pursuant to Section 995 was granted after dismissal by the magistrate of the action pursuant to Section 871 and was recharged pursuant to Section 739." (Stats. 1991, ch. 400, § 2, pp. 2128-2129.)

1994, ch. 169, § 1 (Sen. Bill No. 1827).) Substantively, the 1994 amendments added a new subdivision (b) that provided that an order terminating an action is not a bar to another prosecution or the same offense "if it is a misdemeanor charging an offense based on an act of domestic violence . . . and the termination of the action was the result of the failure to appear by the complaining witness, who had been personally subpoenaed." (Stats. 1994, ch. 169, § 1, p. 1639.) The bill analysis by the Senate Judiciary Committee noted that the purpose of the 1994 amendment was to "expand the existing exception [to section 1387] to include refiling of any misdemeanor based on an act of domestic violence." (Sen. Comm. on Judiciary, Analysis of Sen. Bill 1827 (1993-1994 Reg. Sess.) as amended May 16, 1994, p. 1.)

We also find it telling that cases that have examined the exceptions set forth under section 1387, subdivision (c)(1) through (3) have never interpreted the statute as applying only to situations where a charging document has been dismissed in lieu of an indictment. (See, e.g., *Barron v. Superior Court* (2023) 90 Cal.App.5th 628, 635-639 [interpreting exception provided under section 1387, subdivision (c)(1)]; *Brazell v. Superior Court* (1986) 187 Cal.App.3d 795, 799-800 [examining exception under former section 1387, subdivision (b)(3)].) In sum, nothing in the statute's legislative history, or in any cases that have interpreted section 1387, suggest that subdivision (c)'s separate paragraphs should be read together and not discretely.

And finally, Aguilar-Jimenez argues that the prosecutor's filing of an information recharging the dismissed counts under section 739 is a form of "sequential prosecution[]" that amounts to "forum-shopping," which section 1387 is intended to safeguard against. Not so. Recharging the murder counts in section 739 was not a *successive* prosecution but a continuation of the first. (Cf. § 654; *Kellett v. Superior Court* (1966) 63 Cal.2d 822, 827, fn. omitted ["[f]ailure to unite [offenses that are too interrelated] will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in

22

either acquittal or conviction and sentence"].)  The purpose of section 739 is to "permit the district attorney to dispute the magistrate's erroneous designation of the offense shown by the evidence to have occurred" at the preliminary hearing.  (*Jones*, *supra*, 4 Cal.3d at p. 666.)  That the prosecution was not successful in its endeavor under section 739 does not retroactively splinter a continuing pursuit of four transactionally related offenses into two separate cases.

Accordingly, we conclude that the exception under section 1387, subdivision (c)(3) applies to this case.  As there had only been one prior termination—when the superior court previously granted the section 995 motion—the subsequent complaint was not barred under section 1387.  (*Martinez*, *supra*, 19 Cal.App.4th at pp. 744-747.)[11]

## III.    DISPOSITION

The order dismissing the two murder counts is reversed.

---

[11] Based on our conclusion, we need not reach the district attorney's alternative argument that section 1387.1 applies.

_____

LIE, J.

WE CONCUR:

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

_____

GROVER, J.

*People v. Aguilar-Jimenez*
H050153

| | |
|---|---|
| Trial Court: | Santa Clara County<br>Superior Court No.:  C2200332 |
| | |
| Trial Judge: | The Honorable Nona L. Klippen |
| | |
| | |
| Attorneys for Plaintiff and Appellant<br>The People: | Jeffrey F. Rosen,<br>District Attorney |
| | |
| | Kaci Lopez,<br>Deputy District Attorney |
| | |
| | David R. Boyd,<br>Deputy District Attorney |
| | |
| | Jason Malinsky,<br>Deputy District Attorney |
| | |
| | |
| Attorney for Defendant and Respondent<br>Esteban Martin Aguilar-Jimenez: | Aaron J. Schechter,<br>under appointment by the Court of<br>Appeal, for Defendant and Respondent |

*People v. Aguilar-Jimenez*
H050153